Roy RICKABY, Appellant,

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES,
Respondent.†

Court of Appeals

No. 79–1908. Submitted on briefs July 8, 1980.—
Decided August 5, 1980.
(Also reported in 297 N.W.2d 36.)

For the appellant the cause was submitted on the briefs
of Donald A. Hermanson and Wisconsin Judicare, Inc.,
of Wausau.

For the respondent the cause was submitted on the
brief of Bronson C. La Follette, attorney general, and
Donald P. Johns, assistant attorney general.

† Petition for review denied.

Before Donlin, P.J., Foley, J., and Dean, J.

DONLIN, P.J. Rickaby suffers from cerebral palsy and is certified to receive Medical Assistance benefits. For these reasons, and because no suitable alternative living arrangement is available, Rickaby resides at a skilled nursing facility. In August, 1978, Rickaby requested that the Department of Health and Social Services provide him with an electric wheelchair through the Medical Assistance program. The nursing home also submitted a request on Rickaby's behalf.

The Department's Bureau of Health Care Financing denied these requests, and Rickaby requested a hearing to review this denial. Following a hearing, the Department made findings of fact and affirmed the denial. Rickaby petitioned for ch. 227 review in the circuit court. The circuit court upheld the Department's decision, and Rickaby appeals.

The purpose of Wisconsin's Medical Assistance program is to permit persons like Rickaby to "obtain the most benefits available under Title XIX of the federal social security act."[1] Title XIX, commonly called "Medicaid," makes federal grants-in-aid available to states. While participation in the program is voluntary, once states accept Title XIX funds they must abide by the purposes and provisions of the Act.[2] The central purposes of the Medicaid Act are to help persons like Rickaby "to meet the costs of necessary medical services" and "to attain or retain capability for independence or self-care."[3]

Participating states may determine which particular services to fund under the program, as long as "basic and necessary" services are provided consistent with the

---

[1] Section 49.45(1), Stats.

[2] *Schaak v. Schmidt*, 344 F. Supp. 99 (E.D. Wis. 1971).

[3] 42 U.S.C.A. §1396 (West 1974).

federal act.[4] Wisconsin has chosen to make the purchase or rental of electric wheelchairs available to eligible Medical Assistance recipients in nursing homes.[5] Pursuant to secs. 49.45(2)(a)3 and 49.46(2)(a)7, Stats., the Department promulgated rules governing when authorizations will be made to provide durable medical equipment like electric wheelchairs to Medical Assistance recipients. The policy criteria statement in effect at the time Rickaby applied for his electric wheelchair provided in part:

Policy: Criteria for MA provision of wheelchairs for Nursing Home Residents

Nursing home patients requiring wheelchairs should be provided with the type of wheelchair which will maximize their potential for independent functioning. . . . For the "atypical" patient with "unique" health care needs a wheelchair can be viewed as an extension of their body and a primary requisite to the maintenance and/or achievement of their highest potential level of functioning. Therefore, provision should be made under the Medical Assistance program for the purchase or rental of a special wheelchair for the nursing home patient with unique health care needs.

. . .

2. A wheelchair may be purchased for a nursing home resident by the Medical Assistance program only under one of the following conditions:

---

[4] *Preterm, Inc. v. Dukakis*, 591 F.2d 121, 124 (1st Cir. 1979).

[5] Section 49.46(2)(a)7, Stats; Wis. Adm. Code §HSS 107.24. The Department rule governing its decision in this case was not then in the Wisconsin Administrative Code. Rather, like most rules then governing the Medical Assistance program, it was in the form of a "Policy Criteria Statement." This statement is in the record before this court. This policy rule was placed in the Administrative Code virtually verbatim, as ch. HSS 107, effective February 1, 1980. We note the substantial similarity between the policy criteria statement and the formally adopted §HSS 107.24 *et seq.* We have cited ch. HSS 107 as it appears to codify the pre-existing policy criteria.

a. The resident has a long term or permanent disability and the wheelchair requested constitutes basic and necessary health care for the resident consistent with a plan of health care. Long term will generally be interpreted to mean more than one year.

and

The the [*sic*] wheelchair is prescribed by the attending physician and the purchase of the wheelchair will contribute towards the rehabilitation of the resident through maximizing the resident's potential for independence. The patient requires a wheelchair for which the home would rarely have a need. That is for at least one year it is reasonable to assume no other patient in this home would use this wheelchair.

b. A wheelchair may be purchased for nursing home residents by the Medical Assistance program if the resident is about to transfer from a nursing home to an alternative and more independent setting.

. . .

The mandates of this policy are perfectly clear. Since the policy continually refers to nursing home patients and residents, it can only mean that wheelchairs may be made available to persons who reside in nursing homes. Moreover, the type of wheelchair to be provided is that which maximizes the individual's potential for independent functioning. The strong, descriptive language used, such as "extension of their body" and "primary requisite" demonstrates that wheelchairs are, for the appropriate patient, "basic and necessary health care."

Likewise, Wis. Adm. Code, sec. HSS 107.24 authorizes the purchase of electric wheelchairs through the Medical Assistance program if a request for prior authorization is made pursuant to sec. HSS 107.24 (2) and if the conditions under sec. HSS 107.24 (3) (a) 1 are met. Section HSS 107.24 (3) (a) 1 provides:

Purchase of a wheelchair prescribed by a physician is covered for a nursing home recipient if the wheelchair

will contribute towards the rehabilitation of the recipient through maximizing the recipient's potential for independence, and if:

a. The recipient has a long-term or permanent disability and the wheelchair requested constitutes basic and necessary health care for the recipient consistent with a plan of health care; or

b. The recipient is about to transfer from a nursing home to an alternative and more independent setting.

We believe the new rule makes it clear that nursing home residents who plan to stay in nursing homes can be eligible to receive electric wheelchairs.

The Department found that Rickaby cannot independently propel his wheelchair nor is he capable of satisfactory ambulation. The Department further found that it "is unlikely that the petitioner will ever be able to reside outside of a nursing home setting . . . ." The Department concluded that it could not, "therefore, find that the electric wheelchair meets the criteria of basic and necessary health care . . . ."

The circuit court reviewed the Department's findings and concluded that they were supported by substantial evidence. We agree that the evidence supports these findings. The Department stopped short of the dispositive issue, however. The policy rules state that electric wheelchairs may be purchased for nursing home recipients if the wheelchair will contribute towards the rehabilitation of the recipient through maximizing the recipient's potential for independence, and if two alternative and very different conditions are met: (1) the recipient has a long-term or permanent disability and the wheelchair requested constitutes basic and necessary health care for the recipient consistent with a plan of care; or, (2) the recipient is about to transfer from a nursing home to an alternative and more independent setting. One can qualify under either criterion (1) or

(2) above, but one need not—indeed one could not—qualify simultaneously under both (1) and (2) above.

It appears that the Department's findings and decision in this case are consistent with criterion (2) and would be justified if that were the only criterion to be considered. This is not the rule, however. As we stated previously, we think it clear that nursing home residents can be eligible, pursuant to ch. HSS 107, to receive electric wheelchairs. Nowhere does the rule imply that independent functioning is "living outside a nursing home setting."

While administrative agencies are accorded deference in interpreting their own rules, the court need not accept those definitions that are clearly erroneous or are inconsistent with the plain meaning of the words in question.[6] The Department's interpretation that independence means living outside a nursing home misconstrues the preexisting policy criteria statement and ch. HSS 107. Such an interpretation is inconsistent with the plain language of the rules and an interpretation that would never allow consideration of the individual's personal potential, as this would be irrelevant if the individual was not likely to leave a nursing home setting. Furthermore, such an interpretation rewrites the rules to exclude one of two eligible categories of persons entitled to electric wheelchairs.

The circuit court concluded that the Department was acting within its discretion when it denied Rickaby's request. Discretion, however, means a process of reasoning, not decision-making, and reasoning must "depend on facts in the record or reasonably derived therefrom, and a conclusion based on a logical rationale founded

[6] *Beal v. First Federal Savings & Loan Ass'n*, 90 Wis.2d 171, 279 N.W.2d 693 (1979); *Josam Mfg. Co. v. State Bd. of Health*, 26 Wis.2d 587, 133 N.W.2d 301 (1965).

upon proper legal standards."[7] Here, the Department did not invoke or apply the proper legal standard. In reaching its determination, the Department essentially considered only whether Rickaby was likely to move out of the nursing home.

The Department failed to consider and make findings of certain requirements: whether Rickaby has a long-term disability, whether the electric wheelchair would promote his maximum potential for independence (within the nursing home), whether the chair was prescribed to that end by a doctor, and whether, considering all these factors, the chair constitutes basic and necessary health care. We reverse the judgment of the circuit court and remand this matter to the circuit court for remand to the Department for further fact-finding and consideration of these requirements.

We also note that Rickaby seems to qualify under the rules to receive an electric wheelchair. All the evidence in the record indicates that the professionals charged with Rickaby's care believed that the electric wheelchair would be a major contribution to his health care. The wheelchair was prescribed by petitioner's attending physician. The evidence in the record indicates that the electric wheelchair would be a major step toward maximizing petitioner's potential for independence. Rickaby would be expected to use the chair for between ten and twenty years, and, since he would be using the chair throughout the day, no other person could use it.

Finally, an electric wheelchair would give Rickaby the fundamental freedom of movement. It would give him the ability to choose his daily activities without relying first on the presence of someone to propel him. Rickaby could move about in the community. Rickaby could take care of his basic body and hygiene needs.

[7] *Reidinger v. Optometry Exam. Bd.*, 81 Wis.2d 292, 297, 260 N.W.2d 270, 273 (1977).

Equally important, the abilities to move about, to make choices, and to have the opportunity to try self-care promise to greatly enhance Rickaby's self-esteem and quality of life. It would appear that if all these uncontradicted benefits do not contribute toward Rickaby's capability to maximize his potential for self-care, then nothing short of a miracle freeing him of his disability altogether would.

*By the Court.*—Judgment reversed and cause remanded with instructions.

FOLEY, J. (concurring) I concur in the court's decision to remand this case to the Department for further findings. As pointed out by the majority, the Department's order appears to limit electric wheelchairs to individuals who will eventually be able to live outside nursing homes. This would be an erroneous interpretation of the Department's own rule.

I do not, however, concur with the statement that Rickaby seems to qualify under the rules to receive an electric wheelchair. I believe the Department is entitled to find, from the record, that an electric wheelchair is not basic or necessary health care in Rickaby's case. Rickaby's basic need for the wheelchair is to permit him to move about the nursing home and an achievement center he is bussed to. He will not foreseeably be able to reside outside the home, and his only activities outside the home are at the center. At both the home and the center he is under supervision, and there is always someone available to move him about. His basic need is therefore being met.

Although I am sympathetic to Rickaby's desire for additional independence of movement, I cannot conclude, as has the majority, that this necessarily qualifies him for the wheelchair. The Department is charged with the responsibility for avoiding unnecessary utilization of

services. 42 U.S.C.A. §1396a(a)(30) (West 1974). A wheelchair would no doubt improve the quality of Rickaby's life. Unlimited government funds, however, would also improve the lives of many poor or disadvantaged people.

It is properly a function of the Department to determine whether a need is basic and, if it is, whether the need is being met. If the basic need is being met, it is then up to the Department to determine whether it is necessary health care to meet that need in another manner. These determinations involve interpretation and application of the Department's own rules and, unless plainly erroneous or inconsistent with the federal regulations involved, courts should accept the Department's determination. *Vonasek v. Hirsch and Stevens, Inc.,* 65 Wis.2d 1, 221 N.W.2d 815 (1974).