Jessica M. POPE, Petitioner-Appellant,†

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES,
Defendant-Respondent.

Court of Appeals

*No. 93–1664. Submitted on briefs February 2, 1994.—Decided
August 25, 1994.*

(Also reported in 522 N.W.2d 22.)

———

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *Dennis J. Purtell* and *Brent P. Benrud* of *von Briesen & Purtell, S.C.* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Donald P. Johns*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J. In this appeal, we decide that the Wisconsin Department of Health and Social Services correctly determined that petitioner-appellant Jessica M. Pope is not a resident of Wisconsin entitled to Medical Assistance (MA). We, therefore, affirm the trial court's order; however, we conclude that it is unnecessary to remand this matter to the Department to determine the residence of Pope's parents at the time of her placement because Pope stipulated that her mother was a Tennessee resident and her father's residence was unknown. On remand, the trial court shall affirm the decision of the Department.

Pope was born June 6, 1970. She was admitted to Bethesda Lutheran Home (Bethesda) February 26, 1981. On September 16, 1991, the Jefferson County Circuit Court appointed Mary Heiden as Pope's general guardian. On that date, the court placed Pope at Bethesda pursuant to ch. 55, STATS. Heiden filed an affidavit stating it was her intent that Pope reside in Wisconsin and be placed at Bethesda.

 This appeal requires that we construe various provisions of the Wisconsin Statutes, the Department's administrative rules, and the Code of Federal Regulations. Interpretation of these laws, rules, and regulations presents a question of law. *See Guertin v. Harbour Assurance Co. of Bermuda,* 141 Wis. 2d 622, 627, 415 N.W.2d 831, 833 (1987). Pope informs us that we may substitute our judgment for that of the trial court or the agency. *See Hall Chevrolet Co. v. Department of Revenue,* 81 Wis. 2d 477, 483, 260 N.W.2d 706, 709 (1978).

Pope argues that the definition of "residence" in § 49.01(8g) and (8r), STATS., controls in determining whether she is a resident of Wisconsin eligible for MA. Section 49.01 provides in part:

> As used in this chapter:
>
> . . . .
> (8g) "Residence" means the voluntary concurrence of physical presence with intent to remain in a place of fixed habitation. Physical presence is prima facie evidence of intent to remain.
> (8r) "Voluntary" means according to a person's free choice, if competent, or by choice of a guardian if incompetent.

If these definitions control, Pope is a Wisconsin resident.

The Department has adopted administrative rules for implementing the state's MA program. WIS. ADM. CODE § HSS 103. Section HSS 103.01(1)(a) provides:

> Eligibility for medical assistance (MA) shall be determined pursuant to ss. 49.455, 49.46(1) and 49.47(4), Stats., and this chapter, except that MA shall be provided without eligibility determination to persons receiving AFDC or SSI.

Section HSS 103.03 establishes nonfinancial conditions for MA eligibility. Section HSS 103.03(3) provides in part:

> (b) *Physical presence and intention.* An eligible person shall be a Wisconsin resident, *as determined under 42 CFR 435.403*.[1] Residence shall be based on physical presence, except as provided in an interstate agreement, and on the person's intent to maintain Wisconsin residence indefinitely, except as otherwise provided in pars. (c) to (g). [Second emphasis added.]
> . . . .
> (e) *Institutionalized persons.* 1. For any institutionalized person who is under age 21, or who is age 21 or older and became incapable of indicating intent before age 21, the state of residence is that of:
> a. The parents or the legal guardian, if one has been appointed, and parental rights have terminated at the time of placement in an institution . . . .
> . . . .
> (g) *Establishment of residence.* Once established, residence is retained until superseded by a new place of residence.

[1] "CFR" refers to the Code of Federal Regulations.

Pope has an IQ under 49 and is legally incapable of forming an intent as to her residence. However, that intent has been supplied by her guardian.

Pope makes three arguments. First, the state may provide MA to persons who are not state residents under federal regulations. Second, Pope qualifies as a Wisconsin resident under 42 C.F.R. § 435.403. Finally, those portions of WIS. ADM. CODE § HSS 103.03(3)(e) which conflict with § 49.01, STATS., are invalid because they exceed the Department's authority.

The MA program is familiarly known as "Medicaid." States choosing to participate in this program are required to follow federal guidelines. 42 U.S.C. § 1396; *see Rickaby v. Wisconsin Dep't of Health & Social Servs.*, 98 Wis. 2d 456, 457, 297 N.W.2d 36, 37 (Ct. App. 1980) (once a state accepts Title XIX funds, it must abide by the MA act and applicable regulations).

Title 42 C.F.R. § 435.403 provides extremely detailed provisions for determining state residence. Paragraph (a) provides that "[t]he [state] agency must provide Medicaid to eligible residents of the State . . . ." Pope argues that this provision simply insures that the state will provide MA to persons who are state residents under federal regulations. She argues that there is nothing in the federal regulations which prohibits participating states from providing services to persons not covered by the Medicaid program. These regulations, she asserts, "simply let[ ] participating states know which services the federal government will pay for."

She further argues that she has a "statutory right" to receive MA from the state. "[Federal regulations] only mean[ ] the state may not receive federal reimbursements for the benefits Ms. Pope receives."

We agree that the state could establish a MA program financed solely by the state for persons who do not meet federal requirements. However, Pope did not present any evidence to the Department or to the trial court and has not shown this court that the state has established a MA program which is not integrated with Medicaid. Her reliance on the definition of "residence" in § 49.01(8g), STATS., does not support such an intent. That definition applies equally to those subchapters of ch. 49, STATS., which do not apply to MA. Chapter 49 governs general relief, aid to dependent children and the administration of security aids, in addition to medical assistance. When a subject matter is affected by a statute of general application as well as one of specific application, generally, the more specific controls. *State v. Amato*, 126 Wis. 2d 212, 217, 376 N.W.2d 75, 78 (Ct. App. 1985).

Medical assistance grants are accepted from the federal government under §§ 16.54, 46.016 and 49.45(2)(a)7, STATS. The latter provision provides that "[t]he department shall: . . . Cooperate with the federal authorities for the purpose of providing the assistance and services available under Title XIX to obtain the best financial reimbursement available to the state from federal funds." To obtain federal assistance for a MA program, the state must have a state plan approved by the United States Secretary of Health and Human Services. *Hogan v. Heckler*, 769 F.2d 886, 887-88 (1st Cir. 1985), *cert. denied, Hogan v. Bowen*, 478 U.S. 1007 (1986). The Department represents that "Wisconsin's MA Plan states that it is administering the MA program in accordance with the federal law and policy." Pope does not dispute this assertion.

213

Pope argues that federal Medicaid regulations establish "baseline eligibility requirements" which preclude a participating state from excluding certain persons from coverage; however, she contends, those regulations do not preclude a state from enacting eligibility requirements "less stringent" than federal requirements. Pope argues that the definition of residence in § 49.01(8g), STATS., is such a requirement.

The flaw in Pope's argument is that Wisconsin has not established a MA plan independent of Medicaid. Subsection (1) of 49.45, STATS., is instructive. That section describes the Act's purpose as follows:

> To provide appropriate health care for eligible persons and obtain the most benefits available under Title XIX of the federal social security act, the department shall administer medical assistance, rehabilitative and other services to help eligible individuals and families attain or retain capability for independence or self-care as hereinafter provided.

██ We do not find in the state's implementing legislation any mechanism by which the Department may administer funds outside this joint state-federal program to provide assistance to a person such as Pope. Nor does Pope claim that such funds have been appropriated by the legislature for that purpose. We therefore conclude that Pope's residence under federal Medicaid regulations is not only relevant but is determinative of her eligibility for MA. We further conclude that the administrative regulations adopted by the Department to administer the MA program do not exceed the Department's statutory authority. Section 49.45(2)(a)3, STATS., requires the Department to deter-

mine the eligibility of persons for MA under §§ 49.46, 49.468 and 49.47, STATS, and "rules and policies adopted by the department . . . ."

We next consider Pope's claim that she is entitled to MA even if 42 C.F.R. § 435.403 controls. Pope argues that she is a Wisconsin resident for MA purposes under 42 C.F.R. 435.403(i)(2)ii which provides in part:

> For any institutionalized individual who became incapable of indicating intent before age 21, the State of residence is—
>
> . . . .
> (ii) The parent's or legal guardian's State of residence *at the time of placement* (if a legal guardian has been appointed and parental rights are terminated, the State of residence of the guardian is used instead of the parent's) . . . . [Emphasis added.]

Pope argues that she is a Wisconsin resident under this regulation because a legal guardian has been appointed for her and her parents no longer have parental rights. However, subd. ii relates to "the time of placement." The Department assumes that "the time of placement" of Pope at Bethesda was when she was admitted in 1981. Pope does not dispute that interpretation. Therefore, the fact that Pope was protectively placed at Bethesda in 1991 by the Jefferson County circuit court does not satisfy the eligibility requirement of 42 C.F.R. § 435.403(i)(2)ii. Further, there is no evidence that the parental rights of Pope's parents were ever terminated. The fact that Pope has reached her majority does not satisfy the requirement of subd. ii; the rule requires a judicial termination of parental rights.

Finally, Pope argues that because the Department previously found her eligible for MA, the determination

215

of her residence made at that time continues. WISCON-SIN ADM. CODE § HSS 103.03(3)(g) provides that "[o]nce established, residence is retained until superseded by a new place of residence." On February 17, 1983, the Jefferson County Department of Social Services approved Pope's application for MA, effective October 1, 1982. On August 4, 1987, the county department notified Bethesda that the department was withdrawing a later denial of Pope's application for MA for reasons of residence. However, the county department continued to deny her MA due to her SSI benefits.

The Department hearing examiner rejected Pope's argument based on her prior receipt of MA. He stated the following:

> I am dealing with a new application here, and I must deal with the facts and law as they are now. Determinations made ten years ago under what may have been different rules, and conceivably by mistake, are not binding on me at this time. I am bound by the four corners of the law extant now.

However, the facts and the law presented to the examiner included that the county department had previously determined that Pope was a state resident for purposes of MA and, later, withdrew its denial of Pope's application for MA for reasons of residency.

The Department does not address Pope's argument except to state that the examiner "disposed of this contention in this legal and logical way." We need not decide whether the examiner disposed of Pope's argument in a legal and logical way. We read WIS. ADM. CODE § HSS 103.03(3)(g) to refer to the *actual* establishment of residence, not a determination of residence implicit in payment of MA benefits. We do not decide, however, whether the county or state department could

be collaterally estopped from terminating MA benefits when an applicant has been found to be a state resident after a fair hearing or in a contested case. That issue is not presented.

*By the Court.*—Order affirmed and cause remanded with directions.