Gerald TROTT, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF HEALTH & FAMILY SERVICES,
Respondent-Respondent.

Court of Appeals

*No. 00–1486. Submitted on briefs December 19,
2000.—Decided February 27, 2001.*

## 2001 WI App 68

(Also reported in 626 N.W.2d 48.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Monica Murphy* and *Wisconsin Coalition for Advocacy* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyke*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. This is an appeal pursuant to WIS. STAT. ch. 227[1] following judicial review of an administrative decision. Gerald Trott appeals an order affirming a decision of the Department of Administration, Division of Hearings and Appeals, in favor of the Department of Health and Family Services that denied Trott's prior authorization request for medical assistance payment of a power wheelchair. Trott argues that the department misinterpreted an administrative regulation, WIS. ADMIN. CODE § HFS 107.24(4), which

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

lists exceptions to noncovered medical equipment used by nursing home recipients. We conclude that the department's interpretation is inconsistent with the regulation's plain meaning. We therefore reverse the order.

¶ 2.　Trott is a fifty-eight-year-old man who lives in a Rusk County nursing home and suffers from multiple sclerosis, a progressive neurological disease. Due to his disease, he is "non-ambulatory" and "unable to mobilize any kind of manual chair." At the time of his request for authorization for a new power chair, Trott was using a six-year-old power wheelchair that still functioned. His chair, however, is incapable of being adapted to mount electronic accessories for improved speech and management of environmental controls, such as opening a door or turning on lights, television and radio. It does not fit him due to weight gain and spinal deformity, and cannot be adapted with devices for arm function and repositioning himself. Trott sought authorization for a Storm Ranger X power wheelchair at a cost of $13,952.[2] Trott's rehabilitation specialist, Pam Gardow, provided a written statement explaining the necessity of the power chair in support of Trott's request.[3]

---

[2] The wheelchair is described as follows:

Invacare Storm Ranger X power wheelchair with 20 inch seat width, adjustable height arms, articulating elevating legrests, extra large footplates, wheel locks-external, solid seat, 22NF gel batteries, Avanti Plus contoured back, contoured 20 inch Ultimate cushion, tray table, tray modification for switches, pelvic belt, headrest, power tilt unit, bracket modification for arm support . . . .

[3] Gardow explained as follows:

The Ranger X with programmable electronics allowed for smooth driving and maneuverability around the facility and also out of doors. Gerald needs a 20" wide size to accommodate his hip and

¶ 3.   After his request was denied, Trott appealed
and the Division of Hearing and Appeals affirmed. It

trunk width. An adjustable angle back is required for two reasons:
to accommodate the need to set a backward angle for his significant
kyphosis, and to install the power tilt unit recommended. Adjusta-
ble height arms are needed along with a tray table for arm and
shoulder support and to facilitate upright trunk. The tray requires
a custom modification for joystick cut out and custom cut for the
power tilt switch. To adequately position his legs and feet, Gerald
needs elevating legrests with extra large footplates. The large foot-
plates are needed to protect his feet from injury. External wheel
locks (which are an up charge on this chair) are needed so care
givers can independently set the locks for transportation after the
chair has been put in free wheel, and for stabilizing it for transfers.

For postural support, Gerald needs an Avanti Plus contoured back
(extra wide). This will accommodate and support his significant
kyphosis, and provide lateral trunk support he needs due to poor
trunk control and sitting balance. He requires a solid seat with
Ultimate contoured (extra wide) pressure reduction cushion. This
will help maintain skin integrity. This seating will provide for
much more stable posture and facilitate use of arms. The power tilt
unit is necessary for positioning changes to reduce pressure, reduce
fatigue related to posture and the M.S. and to facilitate trunk and
head control. Gerald requires this independence in position change
both when he is in and out of the facility. A headrest is required for
head support, especially when he fatigues and when the chair is
tilted. A seatbelt will provide for pelvic stability and helps prevent
sliding at the hips.

**Occupational/Vocational Goals**

With the above chair and seating, and a mobile arm support with
custom mounting modifications, Gerald could make major
gains . . . . (Custom mounting is required because the seating
system prevents regular mounting hardware from being attached
to the back canes. The brackets for mounting the custom back are
in the way of the mobile arm support brackets). With this system,
Gerald could be independent with self-feeding after set-up. He
could be independent in washing his face and repositioning him-
self. The ability to reposition and reduce fatigue will allow for
increased sitting tolerance. He could increase his out of facility
programming and participate in classes and programs at the col-
lege (across the street from the nursing home). He would also have
access to the local library close to the facility. Gerald is still young,

determined that Trott failed to meet all the regulatory criteria under WIS. ADMIN. CODE § HFS 107.24(4)(c)2 and 3 because he failed to demonstrate that the wheelchair was required for "occupational or vocational activities." The circuit court affirmed the division's determination, and this appeal followed.

## STANDARD OF REVIEW

¶ 4.    Resolution of this appeal turns on the interpretation of administrative regulations. "In an appeal involving an administrative agency's decision, this court reviews the decision of the administrative agency, not that of the circuit court." *Lilly v. DHSS*, 198 Wis. 2d 729, 734, 543 N.W.2d 548 (Ct. App. 1995). "The interpretation of an administrative rule or regulation, like the interpretation of a statute, is a question of law that we review de novo." *Hillhaven Corp. v. DHFS*, 232 Wis. 2d 400, 409, 606 N.W.2d 572 (Ct. App. 1999). Although not bound by an agency's conclusions of law, we generally defer to an agency's interpretation of its rules, *see Lilly*, 198 Wis. 2d at 734, applying a "great weight" standard. *Irby v. Bablitch*, 170 Wis. 2d 656, 659, 489 N.W.2d 713 (Ct. App. 1992). An agency's interpretation of its own regulations is accepted even though an alternative may be equally reasonable. *Milwaukee County v. DILHR*, 80 Wis. 2d 445, 455–56, 259 N.W.2d 118 (1977). We do not, however, defer to an

and very much wants to be involved with the community and establish a life outside of the nursing home. He may never be able to live outside the nursing home, but he could still be an active member of the community. The . . . goals and community programming constitute occupational and vocational programming.

In addition, since this is a replacement power chair, it is very important to replace the power chair to allow Gerald to continue and expand his level of function and independence.

interpretation that directly contravenes the words of the regulation or is otherwise without a rational basis. *See Irby*, 170 Wis. 2d at 659.

## DISCUSSION

¶ 5.  Trott argues that the department's interpretation is inconsistent with the regulation's meaning and purpose. Trott claims that he need not meet the "occupational or vocational activities" justification of WIS. ADMIN. CODE § 107.24(4)(c)2 because his prior authorization request falls under the § 107.24(4)(c)3 exception to noncovered nursing home services.[4]

¶ 6.  The department, on the other hand, maintains that WIS. ADMIN. CODE § HFS 107.24(4)(c)2 and 3 must be read together. It contends that when read in context with other regulations concerning nursing homes and durable medical equipment, the regulations demonstrate that Trott's prior authorization request must fall within both exceptions. We disagree. When read in context with other regulations regarding nursing homes and durable medical equipment, the unambiguous language of § HFS 107.24(4)(c) establishes that a prior authorization request must fall within only one of the three exceptions to noncovered medical equipment for nursing home recipients. To fully address the department's arguments, we must begin with a general overview of pertinent regulations before addressing the specific language of § HFS 107.24(4)(c)2 and 3.

---

[4] Alternatively, Trott claims that the term "occupational" should be read broadly to include therapeutic activities. However, because Trott's first issue is dispositive, we do not reach his second issue.

### 1. Regulatory Framework

¶ 7. The Wisconsin medical assistance program (MA) is implemented by Title XIX of the Social Security Act and related regulations, along with WIS. STAT. §§ 49.43 to 49.96 and WIS. ADMIN. CODE § HFS 107. *Rickaby v. DHSS*, 98 Wis. 2d 456, 457, 297 N.W.2d 36 (Ct. App. 1980). A state has broad discretion in developing standards for determining the extent of coverage provided. *Charleston Mem'l Hosp. v. Conrad*, 693 F.2d 324, 326 (4th Cir. 1982). The department has rule-making powers consistent with its duties in administrating the MA program. WIS. STAT. § 49.45(10).

¶ 8. WISCONSIN ADMIN. CODE chs. HFS 101–108 have the purpose of administering the MA program, which finances necessary health care services for qualified persons whose financial resources are inadequate. WIS. ADMIN. CODE § HFS 101.01. WISCONSIN ADMIN. CODE § HFS 107.09(2) provides for covered nursing home services and reads: "Covered nursing home services are medically necessary services provided by a certified nursing home to an inpatient and prescribed by a physician in a written plan of care." The costs of all routine day-to-day health care services and materials provided to recipients by a nursing home are reimbursed within the daily rate determined for MA in accordance with WIS. STAT. § 49.45(6m). WIS. ADMIN. CODE § HFS 107.09(2).

¶ 9. Generally, all standard wheelchairs are reimbursed through the nursing home daily rate. WIS. ADMIN. CODE § HFS 107.09(4)(d) ("Wheelchairs shall be provided by skilled nursing and intermediate care facilities in sufficient quantity to meet the health needs of patients who are recipients."). Nursing homes specializing in providing rehabilitative services shall

provide the equipment necessary for the provision of these services, as well as replacement wheelchairs for those recipients who have changing wheelchair needs. *Id.*

¶ 10.   Department regulations provide, however, for medical assistance to purchase an electric wheelchair for an individual nursing home medical assistance recipient if a request for prior authorization is made and certain prerequisites are met. WIS. ADMIN. CODE §§ HFS 107.09(3), HFS 107.24; *Rickaby*, 98 Wis. 2d at 458. The exceptions to the general rule of noncoverage are found in WIS. ADMIN. CODE § HFS 107.24 and are the focus of this dispute:

¶ 11.   Section 107.24(2)(c) provides in part:

*Categories of durable medical equipment.* The following are categories of durable medical equipment covered by MA:

. . . .

8.     Wheelchairs. These are chairs mounted on wheels usually specially designed to accommodate individual disabilities and provide mobility. Examples are a standard weight wheelchair, a lightweight wheelchair and an electrically-powered wheelchair.

¶ 12.   Section 107.24(4)(c) provides:

(4)   OTHER LIMITATIONS. . . .

. . . .

(c)   The services covered under this section are *not covered* for recipients who are nursing home residents *except for*:

1.   Oxygen. Prescriptions for oxygen shall provide the required amount of oxygen flow in liters;

2. Durable medical equipment which is personalized in nature or custom-made for a recipient and is to be used by the recipient on an individual basis for hygienic or other reasons. These items are orthoses, prostheses including hearing aids or other assistive listening devices, orthopedic or corrective shoes, special adaptive positioning wheelchairs and electric wheelchairs. Coverage of a special adaptive positioning wheelchair or electric wheelchair shall be justified by the diagnosis and prognosis and the occupational or vocational activities of the resident recipient; and

3. A wheelchair prescribed by a physician if the wheelchair will contribute towards the rehabilitation of the resident recipient through maximizing his or her potential for independence, and if the recipient has a long-term or permanent disability and the wheelchair requested constitutes basic and necessary health care for the recipient consistent with a plan of health care, or the recipient is about to transfer from a nursing home to an alternate and more independent setting. (Emphasis added.)

Several additional regulations involve cost control provisions that limit services and equipment expenditures.[5]

---

[5] For example, the department draws our attention to the following regulations. Generally the department "shall reimburse providers for medically necessary and appropriate health care services" when provided to currently eligible medical assistance recipients. WIS. ADMIN. CODE § HFS 107.01. "Medically necessary" means a medical service under § HFS 107 that is required to "prevent, identify or treat a recipient's illness, injury or disability" and meets certain standards, including: (1) that it not duplicate other services; (2) that it is not solely for the convenience of the recipient, his family or provider, and (3) is cost effective to an alternative medically necessary service

## 2. Reasonableness of the department's interpretation

■

¶ 13.   We conclude that WIS. ADMIN. CODE § HFS 107.24(4)(c)2 and 3 are not a list of conditions to be met for coverage of wheelchairs. Rather, they are a list of exceptions to the general rule that medical supplies and equipment for nursing home residents are not covered but are factored into the daily rate. Subdivision 2 deals with equipment, including wheelchairs, that are personalized or custom made for the resident. Subdivision 3 deals with physician prescribed wheelchairs for nursing home residents with long-term or permanent disabilities that constitute basic and necessary health care consistent with a health care plan or a transfer. The two subdivisions function independently of one another. The word "and" between subds. 2 and 3 separates the two kinds of exceptions.

which is reasonably accessible to the recipient. WIS. ADMIN. CODE § HFS 101.03(96m).

Nonreimbursable services include services the department determines to be medically unnecessary, inappropriate, in excess of accepted standards of reasonableness or less costly alternative services. WIS. ADMIN. CODE § HFS 107.02(2)(b). Limitations on covered services include the requirement of a physician's order or prescription for medical supplies and equipment. WIS. ADMIN. CODE § 107.02(2m)(a)9. Also, the department may require "prior authorization" for covered services to "safeguard against unnecessary or inappropriate care and services" and to "determine if less expensive alternative care, services or supplies are usable." WIS. ADMIN. CODE § HFS 107.02(3)(b)1 and 4. In determining whether to approve a prior authorization request, the department shall consider the medical necessity of the service, the cost of the service and the extent to which less expensive alternative services are available. WIS. ADMIN. CODE § HFS 101.03(96m)(b).

¶ 14. We may not adopt a construction in derogation of common sense. Courts must look to the common sense meaning of the regulation to avoid unreasonable and absurd results. *See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 766, 300 N.W.2d 63 (1981). "An interpretation is unreasonable if it directly contravenes the language of the statute, is plainly contrary to the legislative intent underlying the statute, or lacks a rational basis." *Telemark Develop. Corp. v. DOR*, 218 Wis. 2d 809, 821–22, 581 N.W.2d 585 (Ct. App. 1998).

¶ 15. The department's proposed interpretation requires WIS. ADMIN. CODE § HFS 107.24(4)(c)1–3 to be read as two, rather than three, exceptions. The department essentially is asking us to rewrite the list of exceptions to make subds. 2 and 3 to be read as one. The department's tortured construction radically departs from usual drafting practices. We conclude that § HFS 107.24(c) 1–3 unambiguously lists three separate exceptions. The department's interpretation that subds. 2 and 3 must be read together is not plausible in light of the regulation's plain language and framework.

¶ 16. The department contends, nonetheless, that its interpretation is reasonable when read in context with the regulations' cost-saving intent, evinced by their overall framework. The department argues that one of the primary purposes of prior authorization is plainly cost control and objective equity. We are satisfied, however, that the regulations demonstrate an attempt to strike a balance between providing appropriate medical assistance to qualified recipients and saving costs.

¶ 17. The stated purpose of medical assistance is provided in WIS. STAT. § 49.45: "To provide appropriate health care for eligible persons and obtain the most benefits available under Title XIX of the federal social security act, the department shall administer medical assistance, rehabilitative and other services to help eligible individuals and families attain or retain capability for independence or self-care as hereinafter provided." *Rickaby*, 98 Wis. 2d at 457. As a participating state, Wisconsin must abide by the purposes and provisions of Title XIX. *Id.* Wisconsin may determine which particular services to fund under the program, as long as " 'basic and necessary' services" are provided consistent with the federal Act. *Id.* at 457–58. "Wisconsin has chosen to make the purchase or rental of electric wheelchairs available to eligible Medical Assistance recipients in nursing homes" under § HFC 107.24(4)(c). *Id.* at 458.

¶ 18. Our interpretation strikes a balance between the regulations' various objectives. On the one hand, consistent with cost control, we recognize that all standard wheelchairs are reimbursed through the nursing home daily rate and must be provided by nursing facilities in sufficient quantity to meet the health needs of its recipient patients. WIS. ADMIN. CODE § HFS 107.09(4)(d). Also, nursing homes specializing in providing rehabilitative services must provide the equipment necessary for the provision of these services, as well as replacement wheelchairs for those recipients who have changing wheelchair needs. *Id.*

¶ 19. On the other hand, it is undeniable that the regulations plainly call for two limited exceptions to these general rules relative to wheelchairs for nursing home residents. WIS. ADMIN. CODE § HFS 107.24(4)(c). With prior authorization, medically necessary custom

adaptive wheelchair positioning systems and powered wheelchairs are separately reimbursable if personalized in nature and custom-made to fit only one recipient, and are justified by the diagnosis, prognosis and occupational or vocational activities. WIS. ADMIN. CODE § HFS 107.24(4)(c)2. In addition, a second exception provides for reimbursement for a physician-prescribed wheelchair that contributes to a long-term or permanently disabled recipient, if it would contribute to rehabilitation though maximizing his or her potential for independence, and constitutes necessary health care consistent with a health care plan, or if the resident is about to transfer to a more independent setting. WIS. ADMIN. CODE § HFS 107.24(4)(c)3.

¶ 20.   Each exception is narrowly tailored to reach a specific goal. For example, while WIS. ADMIN. CODE § HFS 107.24(4)(c)2 does not require a physician prescription or a long-term disability, it does require diagnostical, prognostical and occupational or vocational justification. And, although those justifications are not required in WIS. ADMIN. CODE § HFS 107.24(4)(c)3, there must be a long-term or permanent disability and a physician prescription. We reject the department's contention that reading these two exceptions separately rather than together eviscerates the regulations' cost-saving and objective-equity goals. Because each exception states specific standards for its implementation, the cost-saving and objective-equity purposes are preserved.

3.   Great weight deference

¶ 21.   The department, nonetheless, insists that we defer to its interpretation because it is long stand-

ing. It indicates that it has consistently interpreted the rule since 1995, pointing to *In re Conniff*, No. MPA–32/88803 (Sept. 28, 1995), contained in the record and its appendix.[6] This argument does not bear scrutiny. First, we do not defer to an agency interpretation that directly contravenes the words of the regulation. *Lilly*, 198 Wis. 2d at 659. Second, the record fails to support the department's claim that its interpretation has been consistent since 1995. In July 1996, the department published its Wisconsin Medicaid Update (96–24), listing two separate alternative excep-

---

[6] The department concedes that before 1995, its interpretation was inconsistent. For example, in the proposed *Conniff* decision, the department hearing examiner observed:

> The two specialized exceptions are sec. HSS 107.24(4)(c)2, Wis. Adm. Code, and sec. HSS 107.24(4)(c)3, Wis. Adm. Code. These two sections are joined by the word *and*. However, the two sections are to be read in the alternative and not as cumulative. *Each section is an individual exception to the general rule that medical supplies and equipment for nursing home residents are not covered by MA. It is persuasive that two different Circuit Court Judges in two different circuits have reached this same conclusion. See Daemmrich v. Wisconsin Department of Health and Social Services*, Case No. 90–CV–017149 (Milwaukee County Circuit Court, May 1, 1992; Branch 12; the Honorable Michael Skwierawski); *Hawthorne v. Wisconsin Department of Health and Social Services*, Case No. 87–CV–7071 (Dane County Circuit Court, May 24, 1988; Branch 4; The Honorable Jack Aulik).

*In re Conniff*, No. MPA–32/88863, at 3 n.1 (proposed decision, Aug. 30, 1995) (emphasis added).

In the *Daemmrich* decision, the circuit court relied in turn on an agreement by the department, stating:

> The parties *agree* that the two tests for coverage for a wheelchair under the Department's own administrative code are in fact *alternative* tests and *not cumulative*, relying on *Hawthorne v. Wisconsin Dept. of Health and Social Services*, Case No. 87–CV–7071 (Dane County Circuit Court, May 24, 1988). (Emphasis added.)

*Id.* at 1.

tions to the general rule that wheelchairs for nursing home recipients are not covered. While the 1996 update's interpretation is not the same as ours or completely identical to that advanced by the department at this juncture, we include it because it demonstrates the department's inconsistent approach.[7] We are unpersuaded that the department's interpretation is longstanding or reasonable.

## CONCLUSION

¶ 22.    WISCONSIN STAT. § 227.57(5) provides:

---

[7] The Wisconsin Medicaid Update (96–24) provides:

*Powered Wheelchairs and Wheelchair Positioning Systems Not Included in the Nursing Home Daily Rate—*

Custom adaptive wheelchair positioning systems and powered wheelchairs are not included in the nursing home daily rate. They are separately reimbursable, when medically necessary, and when prior authorized by Wisconsin Medicaid under the following conditions:

1.    A medically necessary adaptive wheelchair positioning system is personalized in nature and custom-made to fit one recipient only, and is used only by that recipient.

2.    The powered wheel chair is justified by the diagnosis, prognosis, and occupational or vocational activities of the recipient

There is one exception to this: A standard wheelchair may be approved if the recipient is transferring from a nursing home to a more independent setting. In this situation, the prior authorization request must include documentation from the physician of the discharge date and new setting location.

Apparently, when the update was published, the department believed that the second half of WIS. ADMIN. CODE § 107.24(4)(c)3 need not meet the criteria set out in § 107.24(4)(c)2 regarding occupational and vocational activities. This interpretation is at odds with the department's current interpretation advanced in the case before us.

> The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

Because the denial of Trott's prior authorization request was premised on an incorrect interpretation of law, we conclude that the decision affirming the denial should be modified. There is no contention that Trott failed to meet the exceptions set forth in WIS. ADMIN. CODE § HFS 107.24(c)3. We conclude, therefore, that the department's decision should be modified to approve Trott's prior authorization request.

*By the Court.*—Order reversed.