# Brian C. PAINTER, D.D.S., Petitioner-Appellant,

v.

# DENTISTRY EXAMINING BOARD, Respondent-Respondent.

Court of Appeals

*No. 02–2218. Submitted on briefs March 26, 2003. —Decided May 7, 2003.*

## 2003 WI App 123

(Also reported in 665 N.W.2d 397.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Peter J. Hickey* of *Everson, Whitney, Everson & Brehm, S.C.* of Green Bay.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Brian C. Painter, D.D.S., appeals from a circuit court order affirming a decision of the Dentistry Examining Board. The Board determined that Painter, a dentist, engaged in unprofessional conduct on two occasions in violation of Wis. Stat. § 453.07 (2001–02)[1] and Wis. Admin. Code § DE 5.02(5) by treating dental caries on minor patients without informing their parents of the viable options for the administration of anesthesia.[2] Painter contends that the Board's decision was based on insufficient evidence and an erroneous interpretation of the law. We conclude that the Board's interpretation of § DE 5.02(5) is reasonable and that there is substantial evidence to

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Although upholding the Board's determination that Painter had engaged in unprofessional conduct, the circuit court vacated and remanded the disciplinary portion of the Board's decision which reprimanded Painter, limited the nature of his dental practice and required him to participate in a course and pay costs. The Board does not cross-appeal this portion of the circuit court's order.

support its conclusion that Painter engaged in unprofessional conduct. We therefore affirm the circuit court's order upholding the Board's decision.

## FACTS

¶ 2. On November 10, 1999, pursuant to a request by the Department of Regulation and Licensing, Division of Enforcement (DORL), the Board summarily suspended Painter's license based on his treatment of four patients under the age of three years. The treatment involved removing the decayed portion of teeth by drilling. Painter did not use anesthesia during the treatments nor did he provide the parents with an option for the administration of anesthesia.[3]

¶ 3. In response, Painter filed a request for a hearing and the Board referred the matter for a Hearing to Show Cause before administrative law judge (ALJ) William A. Black. Following the hearing, the ALJ issued a written "Proposed decision and order" finding that Painter's examination and treatment of the patients in question, J.P., T.H. and C.N.,[4] did not depart from the standard of care ordinarily exercised by a dentist contrary to WIS. ADMIN. CODE § DE 5.02(1) and (5) and that Painter had not engaged in unprofessional conduct contrary to WIS. STAT. § 447.07. Relying on the legal standard of causation in informed consent cases, the ALJ found that DORL had failed to meet its burden of producing substantial evidence demonstrating by a

---

[3] The suspension was also based in part on Painter's decision to use the "clean out and leave" method of treatment on very young patients. Under this method, a dentist will postpone filling the drilled area until the patient is older. This basis for the complaints was later abandoned by the Board.

[4] The complaint regarding a fourth patient was dismissed by the Board prior to the hearing.

253

preponderance of the evidence that a reasonable patient would not consent to the treatment received by J.P. and T.H. The ALJ additionally found that DORL had failed to prove by a preponderance of the evidence that J.P. and T.H. suffered pain. The ALJ concluded, "Lacking both causation and injury under informed consent law, no 'harm' can exist for purposes of satisfying section DE 5.02(5)." The ALJ ordered that the complaints be dismissed. DORL followed with an objection to the ALJ's decision, and the Board undertook a review of the matter.

¶ 4. On May 2, 2001, the Board issued a Final Decision and Order which departed from the ALJ's decision. The Board concluded that Painter's care and treatment of two of the three patients in question, J.P. and T.H., constituted unprofessional conduct and substantially departed from the standard of care ordinarily exercised by a dentist. The Board reprimanded Painter and ordered that his license be limited indefinitely to the treatment of patients over the age of fourteen years and that he complete a course in pain control and management. In explaining its variance from the ALJ's proposed decision, the Board noted that in supporting the dismissal of the complaints against Painter, the ALJ likened WIS. ADMIN. CODE § DE 5.02(5) to "the common law informed consent theory of liability" which "is premised on the right of recovery of a patient for harm, which occurred as a result of the actions of a practitioner. To succeed under that theory, the patient must show that a dentist breached a duty owed to the patient and that actual harm resulted to the patient."

¶ 5. The Board explained that under the regulatory provisions of WIS. STAT. ch. 447 and WIS. ADMIN. CODE ch. DE 5, "a dentist is subject to discipline not only for *actual* harm that is caused, but also for *potential*

harm . . . . [I]t is the conduct of dentists that the Board scrutinizes rather than the recovery rights of individual patients." In support of its decision, the Board cited to the expert testimony that Painter's failure to use anesthesia or to inform the children's parents of the possibility of using either local or general anesthesia fell below the minimum standards of care ordinarily exercised in the profession.

¶ 6. Painter filed a petition for judicial review of the Board's decision. Following briefing by the parties, the circuit court issued a decision upholding the Board's decision establishing two violations but vacating and remanding the disciplinary portion of the Board's order. The court found that the Board's interpretation of Wis. Admin. Code § DE 5.02(5) was reasonable and that it properly exercised its discretion in reaching its decision that Painter had committed two violations of § DE 5.02(5). However, the circuit court additionally found that the Board improperly exercised its discretion and imposed its will and not its judgment in disciplining Painter given that "[t]he nature, character and extent of the two violations are de minimus and no proof exists that either child was harmed other than experiencing short, temporary discomfort."

¶ 7. Painter appeals the circuit court order.

### DISCUSSION

### Interpretation of Wis. Admin. Code § DE 5.02

¶ 8. "In an appeal involving an administrative agency's decision, this court reviews the decision of the administrative agency, not that of the circuit court." *Trott v. DHSS*, 2001 WI App 68, ¶ 4, 242 Wis. 2d 397,

626 N.W.2d 48 (citation omitted). The interpretation of an administrative rule or regulation is a question of law that we review de novo. *Id.* Despite this de novo standard of review, we nonetheless value a trial court's decision on the matter. *Scheunemann v. City of West Bend,* 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993).

¶ 9. Although not bound by an agency's conclusions of law, we generally defer to an agency's interpretation of its rules applying a "great weight" standard. *Trott,* 242 Wis. 2d 397, ¶ 4. An agency's interpretation of its own regulations is accepted even though an alternative may be equally reasonable. *Id.* The burden of showing that the agency's interpretation is unreasonable is on the party seeking to overturn the agency's action; the agency does not have to justify its interpretation. *Nat'l Motorists Ass'n v. Comm'r of Ins.,* 2002 WI App 308, ¶ 13, 259 Wis. 2d 240, 655 N.W.2d 179, *review denied,* 2003 WI 16, 259 Wis. 2d 103, 657 N.W.2d 708 (Wis. Jan 21, 2003) (No. 02–0511).[5] When, as here, the agency designates a hearing examiner to preside over

---

[5] We reject Painter's argument that a de novo standard of review of the agency ruling is appropriate based on the lack of published precedent interpreting WIS. ADMIN. CODE § DE 5.02(5) and informed consent cases. First, the lack of published precedent does not indicate that this is an issue of first impression for the Board. Second, it is not necessary that the Board has previously ruled on the application of § DE 5.02(5) to a factual situation similar to the one presented if the Board otherwise has extensive experience in administering the statutory scheme in a variety of situations. *See Nat'l Motorists Ass'n v. Comm'r of Ins.,* 2002 WI App 308, ¶ 11, 259 Wis. 2d 240, 655 N.W.2d 179, *review denied,* 2003 WI 16, 657 N.W.2d 708 (Wis. Jan 21, 2003) (No. 02–0511). That situation exists in this case.

the case and the agency's decision is contrary to the recommendation of the hearing examiner, the agency must explain on what evidence it has relied to support its result. *See Heine v. Chiropractic Examining Bd.*, 167 Wis. 2d 187, 191–93, 481 N.W.2d 638 (Ct. App. 1992).

¶ 10. WISCONSIN STAT. § 447.07 governs disciplinary proceedings for dental professionals. It authorizes the examining board to make investigations and conduct hearings in regard to any alleged action of any dentist and to reprimand any dentist or deny, limit, suspend or revoke his or her license or certificate if it finds that the dentist engaged in unprofessional conduct. Sec. 447.07(3)(a). WISCONSIN ADMIN. CODE § DE 5.02(5) defines unprofessional conduct by a dentist to include "[p]racticing in a manner which substantially departs from the standard of care ordinarily exercised by a dentist or dental hygienist which harms or could have harmed a patient."

¶ 11. Here, the Board found that in the process of removing dental caries on J.P.'s and T.H.'s teeth, (1) Painter did not administer anesthesia, (2) he failed to provide the patients' parents with the viable options for the administration of anesthesia, (3) the treatment of the caries could have caused pain to J.P. and T.H., and (4) the treatment of the dental caries caused J.P. and T.H. pain. The Board concluded that Painter's care constituted unprofessional conduct in violation of WIS. STAT. § 447.07(3)(a) and that Painter "practiced in a manner which substantially departed from the standard of care ordinarily exercised by a dentist in violation of [WIS. ADMIN. CODE § DE 5.02(1) and (5)]."

¶ 12. Painter challenges the Board's interpretation of WIS. ADMIN. CODE § DE 5.02(5). Relying upon the ALJ's decision, Painter urges the application of tort-based/informed consent law to his disciplinary proceed-

ing and argues that the Board "erroneously construed the necessary elements to prove a claim based on informed consent." Citing to the ALJ's decision, Painter contends that in order to find a violation of § DE 5.02(5), there must be a showing that his actions "created danger" or actual harm to the patient.

¶ 13. However, in construing the relevant statutes and the administrative code, the Board expressly rejected the ALJ's application of a tort-based/informed consent theory of liability in this administrative disciplinary proceeding. As the Board pointed out in its decision, the policy of tort law is to compensate those who are injured by negligent acts by awarding them damages. *Hunker v. Royal Indem. Co.*, 57 Wis. 2d 588, 603–04, 204 N.W.2d 897 (1973); *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶¶ 64–65, 251 Wis. 2d 561, 641 N.W.2d 662. In contrast, the purpose of administrative disciplinary proceedings is to promote rehabilitation of the licensee, protect the public and deter others from engaging in similar conduct. *Galang v. Med. Examining Bd.*, 168 Wis. 2d 695, 700, 484 N.W.2d 375 (Ct. App. 1992). The Board echoes these same statements on this appeal.

¶ 14. We hold that the Board's decision to reject the ALJ's application of tort-based/informed consent law in this disciplinary proceeding is not unreasonable. Tort-based/informed consent law requires a showing that the failure to disclose information caused actual injury. *See Fischer v. Wis. Patients Comp. Fund*, 2002 WI App 192, ¶ 8, 256 Wis. 2d 848, 650 N.W.2d 75 (citing

WIS JI—CIVIL 1023.1).[6] The standards of unprofessional conduct do not require such a showing. WISCONSIN ADMIN. CODE § DE 5.02(5) provides that unprofessional conduct includes practicing in a manner that substantially departs from the standard of care ordinarily exercised by a dentist "which harms or could have harmed a patient." The language used in § DE 5.02(5) clearly contemplates that a dentist could engage in unprofessional conduct without actually harming the patient as long as the conduct "*could have* harmed a patient." *Id.* (emphasis added).

¶ 15. This clear language of WIS. ADMIN. CODE § DE 5.02(5) also disposes of Painter's related complaint that he should not have been disciplined because the Board determined that his conduct merely created the potential harm to the patients as opposed to actual harm. As

---

[6] WISCONSIN JI—CIVIL 1023.1 sets forth the special verdict instructions for informed consent in a medical malpractice action. The verdict poses the following three yes or no questions:

> QUESTION 1: Did (*doctor*) fail to disclose information about the (insert treatment or procedure) necessary for (*patient*) to make an informed decision?
>
> . . . .
>
> QUESTION 2: If you answered question 1 "yes," then answer this question: If a reasonable person, placed in (*patient*)'s position, had been provided necessary information about the (insert treatment or procedure), would that person have (refused)(accepted) the (insert treatment or procedure)?
>
> . . . .
>
> QUESTION 3: If you have answered both questions 1 and 2 "yes," then answer this question: Was the failure by (*doctor*) to disclose necessary information about (insert treatment or procedure) a cause of injury to (*patient*)?
>
> . . . .

we have noted, the language of § DE 5.02(5) allows for a finding of professional misconduct where the conduct "could have harmed" the patient.

¶ 16. Although Painter favors the ALJ's interpretation of WIS. ADMIN. CODE § DE 5.02(5) as requiring actual harm to the patient, it is the Board's interpretation that is entitled to great weight. *Trott*, 242 Wis. 2d 397, ¶ 4. We conclude that the Board's interpretation of § DE 5.02(5) is reasonable.

### *Sufficiency of Evidence*

¶ 17. Painter next argues that the Board's determination is not supported by substantial evidence. Whether Painter engaged in unprofessional conduct is a question of fact to be determined by the Board. *See Gen. Cas. Co. v. LIRC*, 165 Wis. 2d 174, 178, 477 N.W.2d 322 (Ct. App. 1991). The Board's factual findings are conclusive if they are supported by credible and substantial evidence. *Id.*; WIS. STAT. § 227.57(6). "Indeed, as long as there is credible evidence to support the findings, we will uphold them even if they are against the great weight and clear preponderance of the evidence." *Gen. Cas.*, 165 Wis. 2d at 178. Thus, "[w]here . . . the credible evidence supporting the [Board's] decision is sufficient to exclude speculation or conjecture, we may not overturn it." *Id.* at 179.

¶ 18. In addition, the credibility of the witnesses and the persuasiveness of their testimony are for the Board, not the courts, to determine. *See L & H Wrecking Co. v. LIRC*, 114 Wis. 2d 504, 509, 339 N.W.2d 344 (Ct. App. 1983). In applying the credible evidence test to the findings of the agency, a reviewing court does not

weigh conflicting evidence to determine which should be believed. *Id.* If there is credible evidence to sustain the findings, irrespective of whether there is evidence that might lead to the opposite conclusion, a court must affirm. *Id.*

¶ 19. We begin by observing that Painter's first two arguments on this issue are again premised largely on tort-based/informed consent law. From this law, Painter contends that the evidence failed to show that (1) a reasonable person in the parent's position, having been adequately informed of all of the significant risks of the proposed treatment, would have declined to proceed; and (2) J.P. and T.H. suffered actual pain. However, we have already held that the tort law of informed consent does not govern this disciplinary proceeding. From that it follows that DORL did not have to establish that the parents, if advised, would have opted for a different mode of treatment or that the children suffered actual pain. We also have already held that DORL did not have to show that Painter's conduct caused actual harm. Instead, the potential for harm was sufficient. *See* WIS. ADMIN. CODE § DE 5.02(5).

██

¶ 20. Painter's third argument raises an issue of credibility. Painter argues that his expert, Dr. James Rollefson, provided credible testimony that because Painter was only attempting to remove gross caries to allow for remineralization, Painter was not required to explain the risks and benefits of local anesthesia to the parents. However, Dr. Timothy Kinzel, a pediatric dentist, also provided expert testimony with respect to the standard of care for the use of anesthesia on pediatric patients. According to Kinzel, Painter's practice fell below the minimum standards in the profession. Kinzel testified that "the care for [J.P. and T.H.] deviated from

261

the standard of care by not giving the parents of the patients choices as far as how the procedures could be accomplished, including the use of different anesthetics." Further, Kinzel's opinion is consistent with case law which provides that a medical professional must provide information a reasonable person in the patient's position would want to know to be able to make an informed decision regarding reasonably appropriate alternative treatments or procedures. *See Brown v. Dibbell*, 227 Wis. 2d 28, 43, 595 N.W.2d 358 (1999).

¶ 21. Kinzel's testimony provides credible evidence that supports the Board's finding that "the standard of care in the profession is to provide options for anesthesia when a dental procedure may create pain."[7] It is undisputed that Painter failed to provide the parents of J.P. and T.H. with those options. While Rollefson's testimony conflicts with Kinzel's, it was for the Board, not this court, to determine the persuasiveness of this competing evidence. *See L & H Wrecking*, 114 Wis. 2d at 509.

¶ 22. Finally, with respect to the potential for harm to J.P. and T.H., the Board found credible the testimony of each child's mother that her child experienced actual pain during the procedure. The Board additionally found credible the testimony of both Kinzel

---

[7] We appreciate that the testimony of Kinzel and Rollefson is classic "informed consent" evidence because it addresses the treatment options that a health care provider should present to a patient. However, our citation to this testimony is not inconsistent with our earlier holding that the tort-based law of informed consent does not apply in this case. While this informed consent evidence was relevant, the determination of whether Painter engaged in unprofessional conduct is measured under WIS. ADMIN. CODE § DE 5.02(5), not under the legal test for informed consent in tort cases.

and Rollefson that drilling into the dentin of the tooth, as was done on J.P. and T.H., has the potential for pain. The Board found:

> Neither J.P.'s mother nor T.H.'s mother were ever informed that anesthesia was an option for their children. Consequently, they were unable to prevent their children from experiencing pain during the course of their dental procedures. The testimony of both experts, Drs. Kinzel and Rollefson, indicates that the potential for pain exists when the drilling of a tooth extends into the dentin. In the case of both these children, it was necessary to drill into the dentin. Thus, the potential for pain also existed for them.

¶ 23. We conclude that there is substantial evidence to support the Board's finding that Painter practiced in a manner which substantially departed from the standard of care ordinarily exercised by a dentist or dental hygienist which harmed or could have harmed a patient, *see* WIS. ADMIN. CODE § DE 5.02(5), when he failed to use anesthesia or failed to inform the parents of the minor child of options pertaining to the use of anesthesia.

## *CONCLUSION*

¶ 24. We conclude that the Board's interpretation of WIS. ADMIN. CODE § DE 5.02(5) as requiring proof of potential harm, as opposed to actual harm, to a patient is reasonable. We further conclude that substantial evidence exists to support the Board's decision. Accordingly, we affirm the circuit court's order upholding the Board's decision.

*By the Court.*—Order affirmed.