MADISON GAS & ELECTRIC, Plaintiff-Respondent,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION,
Defendant-Appellant,

Dave PARENT, Defendant.

Court of Appeals

*No. 2010AP1849. Submitted on briefs February 9, 2011.
—Decided June 16, 2011.*

2011 WI App 110

(Also reported in 802 N.W.2d 502.)

† Petition for Review denied 12/1/11.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *R. Duane Harlow*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph Danas, Jr.*, and *Staci M. Flinchbaugh* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Before Vergeront, P.J., Lundsten and Blanchard, JJ.

¶ 1. VERGERONT, P.J. The Wisconsin Labor and Industry Review Commission (LIRC) appeals the circuit court order reversing its decision that Dave Parent was entitled to a permanent partial disability (PPD)

award for his left knee based on a total PPD rating of 55%. LIRC decided that, pursuant to Wis. Admin. Code § DWD 80.32(4) (October 2007),[1] Parent was entitled to "stack" the PPD percentages for the two surgical procedures necessitated by the injury: the first was a repair of the medial meniscus, or cartilage, in the knee and the second was a total knee replacement. We conclude that, under *DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 13, 299 Wis. 2d 1, 727 N.W.2d 311, LIRC's interpretation of § DWD 80.32(4) is reasonable and is therefore entitled to controlling weight. Accordingly, we reverse the circuit court's order.

## BACKGROUND

¶ 2. The following facts are undisputed. Parent was employed by Madison Gas and Electric (MG&E). In 1997 he sustained a left knee injury arising out of this employment. The injury was a tear to the medial meniscus, which is cartilage in the knee joint.[2] The injury was surgically repaired by a meniscectomy performed by Dr. Richard Lemon in 1998. At that time, Dr. Lemon assessed a PPD rating of 5%, which MG&E paid. In 2007 Parent underwent a total left knee arthroplasty (knee replacement),[3] also performed by Dr. Lemon. This procedure was a consequence of the original injury. Dr. Lemon assessed a PPD rating of 50%. MG&E paid an amount equivalent to a PPD rating of 45%, taking a credit for the 5% award it had already paid based on the meniscectomy.

---

[1] All references to the Wisconsin Administrative Code are to the October 2007 version unless otherwise noted.

[2] *See* definition of "meniscus," Taber's Cyclopedic Medical Dictionary 1339 (20th ed. 2001).

[3] *See* definition of "arthroplasty," Taber's Cyclopedic Medical Dictionary 178 (20th ed. 2001).

¶ 3. Parent requested a hearing before an administrative law judge (ALJ), contending that the prior 5% PPD must be added to, rather than subtracted from, the post-knee-replacement 50% PPD. The parties stipulated that the only issue in dispute was whether MG&E was liable to Parent for a left knee PPD totaling 55%, as Parent contended, or was liable for only 50%, as MG&E contended.

¶ 4. The ALJ concluded that "each surgical procedure that results from a given injury must receive the minimum PPD rating listed in" Wis. Admin. Code § DWD 80.32. Accordingly, the ALJ concluded that Parent was entitled to an additional 5% PPD. On MG&E's petition for review, LIRC affirmed the ALJ's findings and conclusion.

¶ 5. MG&E appealed LIRC's decision to the circuit court and the circuit court reversed. The court concluded that LIRC's interpretation of Wis. Admin. Code § DWD 80.32 was entitled to no deference because LIRC had interpreted this rule inconsistently. The court also concluded that adding the percentage of disability of the two surgeries was unreasonable where the second surgery was not another repair to the knee but was a total knee replacement.

## DISCUSSION

¶ 6. LIRC contends that its interpretation of Wis. Admin. Code § DWD 80.32 is entitled to controlling weight and therefore the circuit court erred by reversing LIRC's decision. MG&E responds that the circuit court correctly concluded that LIRC's interpretation is not entitled to controlling weight because it is inconsistent with prior decisions LIRC has issued and is unreasonable.

██

¶ 7. On appeal from the circuit court's order, we review the decision of LIRC, not the circuit court's decision. *Brauneis v. LIRC*, 2000 WI 69, ¶ 14, 236 Wis. 2d 27, 612 N.W.2d 635 (citations omitted).

██

¶ 8. Resolution of this appeal requires that we interpret WIS. ADMIN. CODE § DWD 80.32 and apply it to the undisputed facts. This presents a question of law, and we ordinarily review questions of law de novo. *DaimlerChrysler*, 299 Wis. 2d 1, ¶ 10. However, an administrative agency's interpretation of its own rules is entitled to controlling weight unless it is "plainly erroneous or inconsistent with the regulations." *Id.*, ¶ 11 (citation omitted). The inquiry whether the agency's interpretation is plainly erroneous or inconsistent with the rule essentially asks whether the agency's interpretation is reasonable. *See id.*, ¶ 15 (citation omitted). If the agency's interpretation is reasonable, it is entitled to controlling weight even if an alternative interpretation is just as reasonable or even more reasonable. *DOR v. Menasha Corp.*, 2008 WI 88, ¶ 54, 311 Wis. 2d 579, 754 N.W.2d 95 (citation omitted). If the agency's interpretation is not reasonable, we review it de novo, without giving any deference to the agency. *Id.*, ¶ 42 n.13.

██

¶ 9. In this case, the rule at issue, WIS. ADMIN. CODE § DWD 80.32, was promulgated by the Department of Workforce Development (DWD) rather than LIRC. However, we review LIRC's interpretation of this rule in the same way we would review an interpretation of a rule LIRC promulgated itself because LIRC is charged by the legislature with reviewing DWD's decisions and does so frequently. *DaimlerChrysler*, 299

Wis. 2d 1, ¶¶ 11–14. Therefore, we must uphold LIRC's interpretation if it is reasonable. As the party seeking to overturn LIRC's decision, MG&E has the burden of showing LIRC's interpretation is unreasonable. *See Painter v. Dentistry Examining Bd.*, 2003 WI App 123, ¶ 9, 265 Wis. 2d 248, 665 N.W.2d 397.

¶ 10. In the following paragraphs we first provide background on the statutory and regulatory scheme and on *DaimlerChrysler*, which addresses Wis. Admin. Code § DWD 80.32 in the context of different knee surgeries. We then discuss each of the two grounds on which MG&E contends that we should not accord controlling weight to LIRC's interpretation of § DWD 80.32 in this case: prior inconsistency in interpreting the rule and unreasonableness of LIRC's interpretation. For the reasons we explain below, we conclude LIRC's interpretation of § DWD 80.32 has not been inconsistent and is not unreasonable.

I. Statutory and Regulatory Background

¶ 11. A worker who has suffered a permanent disability from a work-related injury may recover for the disability at the end of the healing period. Wis. Stat. § 102.44(2)-(4) (2009–10).[4] Each type of permanent disability is classified as either a scheduled or an unscheduled disability. *Langhus v. LIRC*, 206 Wis. 2d 494, 498–99, 557 N.W.2d 450 (Ct. App. 1996). Scheduled injuries under § 102.52 include injuries to the extremities and impairment of sight and hearing. Section 102.52 establishes the number of benefit weeks for the

---

[4] There is also indemnity paid during the healing period, but that is not relevant to this appeal. All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

listed injuries and impairments, with each week based on two-thirds of the average weekly earnings of the employee. Under § 102.52(11), "the loss of a leg at the knee" is compensated at a rate of 425 weeks.

■

¶ 12. When, as here, there is an injury to a body part listed in Wɪs. Sᴛᴀᴛ. § 102.52 but "the member [is] not actually severed . . ., compensation shall bear such relation to that named in this schedule as disabilities bear to the disabilities named in this schedule." § 102.55(3). In these cases, indemnity is "determined by . . . the percentage of permanent disability resulting . . . as found by the [DWD]." *Id.* In other words, for less than a complete loss of the leg at the knee, the PPD is computed using a percentage based on a comparison of the loss of function from the injury to the knee with the loss of function from the loss of a leg at the knee. *See id.*

¶ 13. DWD has promulgated Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § DWD 80.32, which establishes the "[m]inimum percentages of loss of use for . . . surgical procedures" and includes surgeries to the knee. The rule provides, in relevant part:

> DWD 80.32 Permanent disabilities. Minimum percentages of loss of use for amputation levels, losses of motion, sensory losses and surgical procedures.
>
> (1) The disabilities set forth in this section are the minimums for the described conditions. However, findings of additional disabling elements shall result in an estimate higher than the minimum. The minimum also assumes that the member, the back, etc., was previously without disability. Appropriate reduction shall be made for any preexisting disability.
>
> . . . .
>
> (4) Knee

204

. . . .

Prosthesis Total 50%[5]

. . . .

Total or partial meniscectomy (open or closed procedure). Excellent to good result 5%

(Footnote added.)

¶ 14. WISCONSIN ADMIN. CODE § DWD 80.32 was addressed in *DaimlerChrysler* and LIRC relied on this case in reaching its decision here. In *DaimlerChrysler* the court considered a challenge to a LIRC decision that "stacked" the PPD rates for two successive anterior cruciate ligament (ACL) reconstruction surgeries that were both necessitated by the same work injury to an employee's knee. *DaimlerChrysler*, 299 Wis. 2d 1, ¶¶ 1, 4, 5. The employee had the second surgery because after the first surgery he continued to have problems with his knee. *Id.*, ¶ 4. The second surgery achieved a substantial improvement. *Id.*, ¶ 5. LIRC awarded a 20% PPD award, 10% PPD for each surgery. *Id.*, ¶ 8. The minimum PPD rating for ACL repair is 10%. *See* § DWD 80.32(4). The doctor who performed the surgeries gave an opinion that after the first surgery the employee had a PPD of 15% but after the second successful surgery the PPD was 10% and the employee had "regained full strength in his knee." *DaimlerChrysler*, 299 Wis. 2d 1, ¶¶ 4, 5, 8. The issue before the supreme court was whether LIRC could interpret § DWD 80.32(4) "to award a cumulative minimum PPD for multiple liga-

---

[5] A "prosthesis" is "an artificial device to replace a missing part of the body." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1822 (1993). The parties do not dispute that a total knee arthroplasty qualifies as a total prosthesis under WIS. ADMIN. CODE § DWD 80.32(4).

ment repair procedures, where the resulting award is higher than the highest medical estimate of PPD in evidence." *Id.*, ¶ 3.

¶ 15. The court in *DaimlerChrysler* upheld LIRC's interpretation of WIS. ADMIN. CODE § DWD 80.32 to allow for additional minimum PPD percentages for "multiple or repeat" surgical procedures to the knee. *Id.*, ¶¶ 30, 32. The court concluded that this interpretation is reasonable and consistent with the language of the regulation and its intended purpose. *Id.*, ¶¶ 27–32.

## II. Consistency of LIRC's Interpretation of WIS. ADMIN. CODE § DWD 80.32

¶ 16. MG&E contends LIRC's interpretation is not entitled to controlling weight because LIRC has interpreted WIS. ADMIN. CODE § DWD 80.32 in an inconsistent manner. The consistency of prior agency decisions, or lack thereof, is not expressly included in the articulation of the standard for deciding when to give an agency's interpretation controlling weight. *See, e.g., DaimlerChrysler*, 299 Wis. 2d 1, ¶¶ 11, 15. However, the court in *Daimler Chrysler*, in the context of deciding that LIRC's interpretation of § DWD 80.32 was entitled to controlling weight, addressed that employer's argument that LIRC's prior interpretations of the rule were inconsistent. *Id.*, ¶¶ 24–25. The court concluded they were not inconsistent, apparently viewing the issue of prior consistency as an appropriate consideration in deciding whether an agency's interpretation of its rule is entitled to controlling weight.[6] *Id.*, ¶ 25. Accordingly,

---

[6] The standard for determining whether to afford great weight deference to an agency's interpretation of a statute does contain specific factors that address the consistency, or lack

we address MG&E's argument that LIRC has issued prior inconsistent decisions interpreting § DWD 80.32.

¶ 17. In our discussion of this argument, we consider only the LIRC decisions relied on by MG&E that post-date *DaimlerChrysler*. We do so because in *DaimlerChrysler* the court held that LIRC had consistently interpreted Wis. Admin. Code § DWD 80.32 to allow an award for cumulative surgeries to cure the effects of the same work injury. *See id.*, ¶ 25. In arriving at this conclusion the court considered several prior LIRC decisions. We conclude we are bound by the *DaimlerChrysler* court's ruling on this issue and are therefore foreclosed from considering, as examples of LIRC's inconsistent interpretations, LIRC decisions that pre-date *Daimler-Chrysler* but were not brought to that court's attention. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

---

thereof, of prior agency interpretations of the statute: "(1) the agency was charged by the legislature with the duty of administering the statute; *(2) the interpretation of the agency is one of long-standing;* (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) *the agency's interpretation will provide uniformity in the application of the statute." DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 16, 299 Wis. 2d 1, 727 N.W.2d 311 (emphasis added) (citations omitted). The controlling weight standard and the great weight standard have been described as "similar" in that "[b]oth ... turn on whether the agency's interpretation is reasonable and consistent with the meaning or purpose of the regulation or statute." *Id.*, ¶ 15 (citation omitted). However, we are not aware of a case, and MG&E cites none, in which the consistency of prior interpretations of the agency's rule is expressly held to be part of the standard for deciding whether to give the agency's interpretation of the rule controlling weight.

207

¶ 18. The first decision post-dating *Daimler-Chrysler* on which MG&E relies is *Braun v. Froedtert Malt*, Claim Nos. 2001–047953 & 2003–003106 (LIRC Sept. 19, 2007). In *Braun*, LIRC deducted from the 50% PPD award for a total knee replacement a 7.5% PPD award previously made for an arthroscopic knee surgery when both procedures were necessitated by the same work injury. *Id.* at 3. LIRC concedes that *Braun* is not consistent with its interpretation of the rule, but asserts that this inconsistency is due to an error in its factual findings in *Braun*. LIRC explained this error in *Klettke v. American Innvotech*, Claim No. 1989–041491 (LIRC June 30, 2010), in which LIRC awarded 50% for a total knee replacement in addition to the 10% previously paid for a repair surgery to the same knee, where both were necessitated by the same work injury. *Id.* at 2. LIRC explained in *Klettke* that in *Braun* the 7.5% assessment was deducted because in drafting the decision LIRC erroneously thought that assessment was attributable to a pre-existing injury. *Id.* at 3–4. MG&E argues that this explanation is not credible. However, we have no reason to doubt LIRC's explanation of its thought process as set forth in *Klettke*.[7]

---

[7] In this respect, we have more information than the circuit court had at the time it decided that certain of LIRC's prior decisions, including *Braun*, were inconsistent with LIRC's interpretation in this case. *Klettke v. American Innvotech*, Claim No. 1989–041491 (LIRC June 30, 2010), was issued after the circuit court issued its decision in this case, and, apparently, it was the circuit court's opinion in this case that prompted the explanation of *Braun* in *Klettke*. In *Klettke* LIRC states that "[t]his error [in *Braun*] was brought to the commission's attention by a recent circuit court decision that cited the *Braun* case. By then the commission had lost jurisdiction to reopen the *Braun* decision . . . ." *Klettke* at 4.

208

¶ 19. The second post-*DaimlerChrysler* decision on which MG&E relies is *Taylor v. Divine Savior Hospital and Nursing Home*, Claim No. 2006–021498 (LIRC July 16, 2009). In *Taylor*, LIRC reduced the applicant's PPD award for a partial knee replacement by a total of 10%, which consisted of 5% for each of two meniscectomies unrelated to the work injury. *Id.* at 7. MG&E concedes that *Taylor* is consistent with LIRC's interpretation of Wis. Admin. Code § DWD 80.32 to mean that only a disability of the same joint that existed *prior to the work injury* reduces the award—not a disability based on a prior surgery *necessitated by the same work injury.* However, MG&E argues, *Taylor* is inconsistent with a statement in another LIRC decision, *Hellendrung v. Wal-Mart*, Claim No. 1999–039147 (LIRC Feb. 23, 2001).

¶ 20. In *Hellendrung*, LIRC concluded that the amount contested by the employer—and upheld by LIRC—was based on a surgical procedure that was necessitated by the work injury at issue and not by the employee's impairments that existed prior to that injury. *Id.* at 2. This ruling is consistent with *Taylor*.

¶ 21. However, MG&E asserts, the following statement in *Hellendrung* is inconsistent with *Taylor*: "A deduction for any pre-existing disability is most appropriately applied to previous losses of range of motion and amputations, but not to the listed surgical procedures in [Wis. Admin. Code] § DWD 80.32." *Hellendrung* at 2. MG&E contends that this statement means that, if a surgical procedure is listed in § DWD 80.32, a disability rating for that procedure should not reduce an award for a later listed procedure even if the first procedure occurred prior to the work injury at issue. We do not discuss this statement in *Hellendrung* further because, even if MG&E is correct about the meaning,

the issue this statement addresses does not appear in this case. This case does not concern surgical procedures to the knee that occurred *prior* to the work injury. We are therefore not concerned with LIRC's interpretation of § DWD 80.32 in that context. The issue we discuss here is whether LIRC has consistently interpreted the rule to provide that, where successive surgeries are necessitated by the *same* work injury, the minimum PPD ratings for each procedure are cumulative. MG&E concedes that neither *Taylor* nor *Hellendrung* is inconsistent with LIRC's interpretation on this point.[8]

██

¶ 22. In summary, *Braun* is the only LIRC decision issued since *DaimlerChrysler* that MG&E points to as inconsistent with LIRC's interpretation of Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § DWD 80.32 in this case. Given LIRC's explanation of *Braun* in *Klettke*, we conclude that *Braun* is not a basis for not affording controlling weight to LIRC's interpretation.

---

[8] MG&E points out that the court in *DaimlerChrysler*, 299 Wis. 2d 1, ¶¶ 25, 31, discussed the statement from *Hellendrung v. Wal-Mart*, Claim No. 1999–039147 (LIRC Feb. 23, 2001), on which MG&E relies. According to MG&E, that discussion in *DaimlerChrysler* supports MG&E's reading of the meaning of the statement from *Hellendrung* and this supports MG&E's contention that *Taylor v. Divine Savior Hospital and Nursing Home*, Claim No. 2006–021498 (LIRC July 16, 2009), is inconsistent with *Hellendrung* because of this statement. It is unnecessary to analyze *DaimlerChrysler* on this point for the same reason that we have declined to further address the *Hellendrung* statement itself: the issue of LIRC's interpretation of Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § DWD 80.32 at issue in this case does not involve a surgery or a disability to the knee that occurred or existed prior to the work injury at issue.

III. Reasonableness of LIRC's Interpretation

¶ 23. Because we have rejected MG&E's argument on inconsistency, LIRC's interpretation of WIS. ADMIN. CODE § DWD 80.32 is entitled to controlling weight unless it is unreasonable. *See DaimlerChrysler*, 299 Wis. 2d 1, ¶¶ 11, 15.

¶ 24. MG&E contends that LIRC's interpretation of WIS. ADMIN. CODE § DWD 80.32 is unreasonable because, where the second surgery is a total joint replacement, the second surgery "completely eliminate[s] the subject of—and the disability that resulted from—the first surgery." Thus, MG&E asserts, there can be no "cumulative, negative effect on function of the body part." MG&E presents three arguments to show that LIRC's interpretation is unreasonable.[9]

¶ 25. First, according to MG&E, *DaimlerChrysler* does not address the situation where a second surgery is a complete joint replacement and the *DaimlerChrysler* court's rationale for concluding that LIRC's interpretation of WIS. ADMIN. CODE § DWD 80.32 was reasonable does not apply in this situation. In support of this argument, MG&E relies on the following italicized portion of footnote 14, which provides in full:

> Contrary to the position taken in ¶ 45 of the dissent, the LIRC's conclusion that additional minimum PPD percentages are allowable for repeat surgical proce-

---

[9] Portions of MG&E's argument appear to be answering the inquiry whether its proposed interpretation or LIRC's is more reasonable. This is an appropriate inquiry only if our review of LIRC's interpretation of WIS. ADMIN. CODE § DWD 80.32 is de novo. However, we do not review LIRC's interpretation de novo unless we first conclude it is not entitled to controlling weight. Therefore, we construe MG&E's argument to be that LIRC's interpretation is unreasonable.

211

dures to the knee is an entirely reasonable one. The LIRC's decision contains a reasoned analysis that is consistent with the language of Wis. Admin. Code § DWD 80.32, the notes resulting from the work of the subcommittee, and the policy concerns underlying Wisconsin's Worker's Compensation Act. The LIRC's decision recognizes *that repeat or multiple surgeries have a cumulative, negative effect on function of the body part upon which they are performed.* The LIRC's decision is also consistent with the well-established principle "that the Worker's Compensation Act, ch. 102, Stats., is to be liberally construed to effectuate its goal of compensating and making injured workers whole . . . ." *ITW Deltar v. LIRC*, 226 Wis. 2d 11, 18, 593 N.W.2d 908 (Ct. App. 1999).

*DaimlerChrysler*, 299 Wis. 2d 1, ¶ 32 n.14 (emphasis added).

¶ 26. MG&E does not point to any evidence in the record that supports its assertion on the actual disability resulting from a total knee replacement performed after a meniscectomy. However, even if we assume that a medical opinion would support a 50% PPD for a successful total knee replacement after a meniscectomy, we conclude that MG&E's argument is not significantly different than that rejected by the court in *Daimler-Chrysler*.

¶ 27. The medical opinion in *DaimlerChrysler* was that the disability after the second ACL surgery was *not* cumulative to the disability existing after the first ACL surgery. Instead, according to the medical opinion, the second successful surgery reduced the disability existing after the first unsuccessful surgery to the PPD rating associated with *one* successful ACL surgery. Nonetheless, the court concluded that, despite the medical evidence, LIRC could reasonably interpret

Wis. Admin. Code § DWD 80.32(4) to allow for stacking of the minimum rating for each surgery.

¶ 28. In this case, MG&E's assertion on the effect of the total knee replacement is equivalent, for purposes of our analysis, to the medical opinion in *Daimler-Chrysler*: according to MG&E's assertion, after the second surgery, as a factual matter the remaining disability is associated only with the second surgery. Given that there was no apparent reason based on the facts in *DaimlerChrysler* to stack the PPDs and that the court instead relied on its assessment of the general reasonableness of LIRC's interpretation of the rule, it is not unreasonable here for LIRC to add the minimum PPDs of both surgeries. Stated differently, the thrust of MG&E's argument amounts to a challenge to *Daimler-Chrysler* and, therefore, it must fail.

¶ 29. MG&E's argument based on footnote 14 in *DaimlerChrysler* does not persuade us otherwise. The *DaimlerChrysler* court's comments on the "cumulative, negative effect on function of the body part upon which [the repeat or multiple surgeries] are performed" is not a factual statement that pertains only when certain surgical procedures are involved. There are no such facts referred to in the *DaimlerChrysler* opinion. Rather, we understand the court in this footnote to be concluding as a matter of law that LIRC can reasonably make this assumption, despite medical opinion to the contrary.

¶ 30. Second, MG&E argues that a PPD award of 55% in this case "results in an award greater than 100 percent of the existing impairment," and this, MG&E asserts, is prohibited by Wis. Stat. § 102.44(4). This section provides: "Where the permanent disability is covered by ss. 102.52, 102.53, and 102.55, such sections shall govern; provided, that in no case shall the percent-

213

age of permanent total disability be taken as more than 100 percent." By this statute's plain terms, the limitation to 100% applies to "the percentage of permanent total disability." MG&E does not present a developed argument explaining why permanent *total* disability is relevant to this case.

¶ 31. MG&E may mean that, if 55% PPD may be awarded in this case, then there could hypothetically be an award of more than 100% for an injury to a knee that required multiple surgeries. However, the court in *DaimlerChrysler* declined to address a similar argument. Noting that worker's compensation cases are fact intensive, the *DaimlerChrysler* court decided there was no need to address the employer's hypothetical assertion. *DaimlerChrysler*, 299 Wis. 2d 1, ¶ 33. The same response is applicable here: Parent has not been awarded more than 100% for his knee injury and therefore there is no reason to consider that possibility now.

¶ 32. Alternatively, it may be that MG&E means that 50% PPD for disability to a knee when there is a total knee replacement, regardless of prior surgery to the knee necessitated by the same injury, is 100% of what an employee is entitled to. This is simply a restatement of MG&E's argument that a prior surgery necessitated by this same work injury cannot be "stacked" with a total knee replacement. We have already explained that *DaimlerChrysler* does not support this position but, instead, supports stacking in this situation.

¶ 33. Third, MG&E argues that awarding cumulative PPD ratings without reference to the actual disability sustained by the applicant erroneously injects the concept of pain and suffering into worker's compensation. The purpose of the Worker's Compensation Act,

214

MG&E contends, is to compensate injured employees for the lasting impact of the injury on their earning capacity, and to provide cumulative awards for each procedure, regardless of the actual percentage of disability suffered by the employee, is contrary to this purpose. However, *DaimlerChrysler* has already decided that it is reasonable for LIRC to award cumulative PPD percentages based on the minimums in Wis. ADMIN. CODE § DWD 80.32, despite contrary medical testimony on the percentage of disability actually sustained by the employee.

██

¶ 34. In summary, we conclude that, under *DaimlerChrysler*, LIRC's interpretation of Wis. ADMIN. CODE § DWD 80.32(4) to permit "stacking" of surgeries to the knee necessitated by the same work injury, even when the second surgery is a total knee replacement, is a reasonable interpretation. Thus, under the applicable standard of review, we must give LIRC's interpretation controlling weight and affirm it.

## CONCLUSION

¶ 35. Because LIRC's interpretation of Wis. ADMIN. CODE § DWD 80.32(4) is entitled to controlling weight, the circuit court erred in reversing LIRC's decision awarding a total of 55% PPD for Parent's two knee surgeries necessitated by the same injury. Accordingly, we reverse the circuit court's order and remand with instructions to affirm LIRC's decision.

*By the Court.*—Order reversed and cause remanded with instructions.