Angela BELL, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF CHILDREN AND FAMILIES,
Defendant-Respondent.

Court of Appeals

*No. 2014AP1823. Submitted on briefs April 14, 2015.
—Decided May 12, 2015.*

2015 WI App 47

(Also reported in 867 N.W.2d 430.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jill M. Kastner* and *Sheila Sullivan* of *Legal Action of Wisconsin, Inc.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general and *Maura FJ Whelan*, assistant attorney general.

Before Curley, P.J., Brennan, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Angela Bell appeals the order of the circuit court affirming the Wisconsin Department of Children and Families' decision to revoke her in-home child care certification and to prohibit her from re-applying for two years. Bell argues: (1) the term "moving in" used in WIS. ADMIN. CODE § DCF 202.08(1)(c) (Jan. 2012) was too vague to comply with her due process rights; (2) we should not give the Department's decision "controlling weight" because its interpretation was unreasonable and contrary to the applicable regulation; (3) the record does not contain substantial evidence to support the Department's finding that she violated the regulations; and (4) the two-year ban on her from re-applying for child-care certification was too severe a penalty. We affirm.

## BACKGROUND

¶ 2. In November 2010, the Department of Children and Families and Milwaukee Early Care Administration approved Bell's request for certification to do child care in her home. At that time, Bell signed a form

attesting that "all information on this checklist is true and accurate, to the best of my knowledge" and that she "understand[s] the above standards and that I must comply with these standards to maintain my certification." Under these standards, Bell agreed to "report as soon as possible, but no later than the county or tribal agency's next working day, to the agency any changes that affect the certified family child care operator's eligibility for certification . . . including . . . [i]ndividuals moving in or out of the household," *see* WIS. ADMIN. CODE § DCF 202.08(1)(c)7., and to "[e]nsure that all information provided to the county or tribal agency is current and accurate," *see* § DCF 202.08(1)(e)3.

¶ 3. In August 2010, Bell's husband, Alaric Neely, was convicted of strangulation and suffocation in violation of WIS. STAT. § 940.235(1) (2009–10)[1] after he was found guilty of trying to choke Bell to death. Bell's own son had to pull Neely off Bell to save her life. Neely spent sixty days in the House of Correction and then had to serve three years of probation. The court also ordered him to have no contact with Bell. As a result, Neely moved in with his daughter after he was released from the House of Correction. In November 2011, Neely suffered two strokes and spent two months in the hospital. Neely's probation agent, Rabekah Polasky, with approval from the court, agreed to modify the no-contact order to allow Bell to visit Neely in the hospital and to help with his care after he was discharged and back living at his daughter's house.

¶ 4. Bell ran her home child care business weekdays from 7:00 a.m. to 7:00 p.m. After business hours, Bell went to the daughter's house to help care for

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

Neely. In the Spring of 2012, Bell decided it would be easier to have Neely stay at her home and he began living there, although between 7:00 a.m. and 7:00 p.m. each weekday, Neely went to his daughter's house because those were the child care hours and Bell knew she needed the Department's permission before Neely could be at her house when children were present. On March 19, 2012, Neely told Polasky that he wanted to move back in with Bell, and on April 17, 2012, Neely told Polasky he had moved in. Neely gave Bell's address as his own on a reporting form for Polasky. During the weekday morning on May 1, 2012, Polasky came to Bell's house to make sure the home was appropriate, to verify that Neely had moved in, and to confirm he was in fact living there. Bell and the child-care children were on a field trip and therefore not home for Polasky's visit.

¶ 5. On April 23, 2012, Bell contacted the Department about Neely moving into her home. Bell knew from the initial application for certification she filled out, that the Department required notice of "all other persons living in your home 10 years of age or older." On April 30, 2012, Bell submitted the required Change of Circumstance Report form adding Neely as a resident in her home and advising that he would move in as soon as the Department approved. On June 22, 2012, the Department discovered Neely's felony conviction from a criminal background check and that he was still on probation. Polasky told the Department investigator Neely had moved into Bell's home on April 17, 2012, had given that address as his own, and Polasky verified at the May 1, 2012 home visit Neely was in fact living in Bell's home.

¶ 6. As a result, Maynou Thao, a child care certification specialist from the Department, sent Bell

notice by letter dated June 28, 2012, that her certification had been revoked because Bell "misrepresented and withheld information pertaining to Mr. Neely residing at your home and having him in the home poses a threat to the health and safety and welfare of your child care children." The notice advised Bell that she had violated two rules/regulations:

> DCF 202.08(1)(e) Administration. A certified family child care operator shall do all of the following: . . . 3. Ensure that all information provided to the county or tribal agency is current and accurate.

> DCF 202.08(1)(c) [Reporting changes.] A certified family child care operator shall report as soon as possible, but no later than the county or tribal agency's next working day, to the agency any changes that affect the certified family child care operator's eligibility for certification under this chapter, including the following: ... 7. Individuals moving in or out of the household.

The notice told Bell her certification would be revoked and she could not re-apply for two years because she "demonstrated unsound judgment by allowing a convicted felon, Mr. Neely, to reside in your home thereby endangering the health and safety and welfare of your children in your care."

¶ 7. In early July 2012, Neely reported to Polasky he had left Bell's house and moved back in with his daughter. Bell appealed the Department's revocation decision and the case went to a hearing in April 2013. Polasky testified Neely told her in March he wanted to "move in" with Bell and told her he did "move in" to Bell's house on April 17, 2012. She said Neely specifically used the words "move in" and reported he had reconciled with Bell and the two were getting back together. Polasky also testified she did

two home visits on May 1, 2012 and June 26, 2012 to confirm the house was an appropriate living environment and to verify Neely was in fact living in the house. She does her home visits weekdays between 8:00 a.m. and 4:30 p.m. When Polasky arrived, Neely was home alone. He showed her his bedroom where she saw his clothes, deodorant, shoes, and other things for basic living needs. She also said that on April 17, 2012, Neely wrote down Bell's address as his own on the reporting form, and said he wanted to change his residence from his daughter's to Bell's. She further testified Neely told her the daycare did not want him at Bell's when the child-care children were there so he went to his daughter's house when the daycare was open.

¶ 8. Armando Hernandez, the Department employee who conducts background checks, testified about why Bell's request to allow Neely to reside in her household was denied: Neely had a felony conviction for strangulation and suffocation for trying to choke Bell and it was determined this conviction posed a threat to the health and safety of the child-care children based on the seriousness of Neely's crime and the threat of harm and violence associated with it.

¶ 9. Thao also testified at the hearing. She worked as a "certification specialist" and Bell had been assigned to Thao. Thao revoked Bell's certification because Bell:

> misrepresented and misled the agency, informing the agency that she moved her husband in once we approve her husband but she went ahead and did that without approval. But another fact to that is that he had a conviction where he had choked Ms. Bell to the point where her son had to intervene for the incident to stop.

536

During Thao's testimony, the hearing transcript notes: "Unknown to the Hearing Officer, the recording device stopped functioning at this point in the hearing." It is unknown how much of Thao's testimony was not recorded.

¶ 10. The transcript continued with the start of Bell's testimony. She said Neely did not move into her house; rather, he "visited." Bell testified that, after Neely's stroke, she worked with Polasky to modify the no-contact order to enable her to help care for Neely after child care hours. At first, she did this at his daughter's house because he lived there, but this became too stressful. As a result, in April 2012, she called Thao and asked how she could get Neely "moved back in." Thao told Bell the process involved "a background check and a court fee of $10 and he couldn't move in until it was okayed." Thao also told Bell that Neely could visit after 7:00 p.m. and before 7:00 a.m., but could not visit during her hours of operation. As a result, Bell believed it was okay for Neely to be at her house as long at it was not weekdays between 7:00 a.m. and 7:00 p.m. She started picking him up at 7:00 p.m., allowed him to stay overnight, and drove him back to his daughter's home before 7:00 a.m. the next day. Neely also stayed on weekends because the child care did not operate on the weekends. Bell testified she did not give Neely a key, he did not pay rent, did not receive mail at her house, and did not move his possessions in. Bell also said she submitted the background information form and change of circumstance report because she knew she needed permission to have Neely visit her home. It was not her intent to have Neely live with her. She also testified she knew Polasky was doing a home visit on May 1, but she took the child-care children on a field trip that day and

therefore was not present for Polasky's visit. Bell did not remember Polasky's second home visit on June 26.

¶ 11. Neely testified last. He said he lived at his daughter's house after being released from the House of Correction, that he had a key to her house, kept his possessions there, got his mail there, and "paid for the things I needed." He testified that when Bell started caring for him after his strokes, they discussed getting back together, but he did not move into Bell's home. He considered himself a visitor and had Polasky approve Bell's home so he could spend the night there. He said his possessions Polasky saw during the home visits to Bell's house were things he had left there before his arrest. Neely testified he "[v]aguely" remembered telling Polasky on April 17, 2012 he had moved in with Bell, but that he really did not move in—he "only visited." When asked about writing Bell's address as his own on a reporting form, Neely said he made a mistake. Neely later in his testimony said he "didn't move in until May 2nd or May 3rd," but he always went back to his daughter's house during the daytime. He admitted staying at Bell's house on weekends. This changed when Bell got the revocation letter from the Department. He went back to sleeping at his daughter's house. He testified he had "tons" of possessions at Bell's house because he was her husband.

¶ 12. The hearing officer issued his findings: (1) Bell applied for child care certification so she could get Wisconsin Shares funding as payment for the children in her care and in her application Bell agreed to follow all the rules; (2) on April 30, 2012, Bell submitted a Change of Circumstance Report form and a background information disclosure form to notify the Department Neely would be moving in with her as soon as the Department approved; (3) Neely had pre-

viously been convicted of a class H felony and was sentenced to sixty days in jail and three years' probation; he suffered a stroke that left him in need of care, which Bell provided to him at his daughter's home; when this became too difficult, Bell submitted the forms to add Neely to her household; (4) Neely told his probation officer, Polasky, he moved into Bell's house on April 17, 2012, and Polasky conducted a home visit on May 1, 2012. In early July, Neely phoned Polasky and told her he moved back in with his daughter; (5) the May 1st visit took place during child care hours of operation and Neely was present in the home at the time; (6) the Department sent a letter dated June 28, 2012, to Bell revoking her certification and preventing recertification for two years based on her "alleged failure to provide current and accurate information and her alleged failure to timely report individuals moving into or out of the household."

¶ 13. The hearing officer concluded the Department had the authority and acted correctly when it revoked Bell's certification. The hearing officer concluded Neely's presence on May 1st *during normal hours of operation of the day care,* even though the children were on a field trip, violated the rules and regulations requiring a background check under Wis. Stat. § 48.685 (2013–14) (requiring background checks for anyone residing in the home who may have direct contact with the children).[2] He further concluded

---

[2] Wisconsin Stat. § 48.685 provides as material:

**Criminal history and child abuse record search. (1)** In this section:

. . . .

 (bm) "Nonclient resident" means a person who resides, or is expected to reside, at an entity or with a caregiver specified in

Neely "moved in" to Bell's home without approval, and as a result, Bell violated Department rules. The hearing officer concluded the Department's penalty of, in essence, a two-year revocation was properly within its discretion.

¶ 14. Bell appealed to the circuit court, which affirmed the Department's decision.

## DISCUSSION

¶ 15. Bell makes four claims: (1) the term "moving in"—used but undefined—in WIS. ADMIN. CODE § DCF 202.08(1)(c) was so vague it violated her right to due process; (2) we should not give the Department's interpretation controlling weight deference; (3) there is insufficient evidence to support the Department's conclusion; and (4) the two-year sanction is too severe.

¶ 16. On appeal, we review the Department's decision, not the circuit court's. *See Trott v. DHFS*, 2001 WI App 68, ¶ 4, 242 Wis. 2d 397, 626 N.W.2d 48. We will uphold the Department's factual findings if

par. (ag)1.am., who is not a client of the entity or caregiver, and who has, or is expected to have, regular, direct contact with clients of the entity or caregiver.

. . . .

(2)(am) The department, a county department, an agency contracted with under s. 48.651(2), a child welfare agency, or a school board shall obtain all of the following with respect to a caregiver specified in sub. (1)(ag)1.b., a nonclient resident of an entity, and a person under 18 years of age, but not under 12 years of age, who is a caregiver of a child care center that is licensed under s. 48.65 or established or contracted for under s. 120.13(14) or of a child care provider that is certified under s. 48.651:

1. A criminal history search from the records maintained by the department of justice.

they are supported by substantial evidence. *See Krahenbuhl v. Wisconsin Dentistry Examining Bd.*, 2006 WI App 73, ¶ 18, 292 Wis. 2d 154, 713 N.W.2d 152; *see also* WIS. STAT. § 227.57(6).[3] When we review the Department's interpretation or application of its own rules or regulations, we give the Department's decision controlling weight deference. *See Aguilar v. Husco Int'l, Inc.*, 2015 WI 36, ¶ 17, 361 Wis. 2d 597, 863 N.W.2d 556. " 'An administrative agency's interpretation of its own rules is controlling unless plainly erroneous or inconsistent with the language of the rule.' " *Id.* (citation omitted). "Further, an interpretation that is subject to such deference needs to 'merely be reasonable for it to be sustained.' " *Id.* (citation omitted).

A. *Due Process.*

■■

¶ 17. Bell complains the term "moving in" was too vague to comport with due process. "[V]agueness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *State v. Courtney*, 74 Wis. 2d 705, 709, 247 N.W.2d 714 (1976). The vagueness test has two prongs: (1) does the language sufficiently warn those trying to obey the law that their conduct violates the regulation; and (2) "whether those who must

---

[3] WISCONSIN STAT. § 227.57(6) provides in relevant part:

> If the agency's action depends on any fact found by the agency . . . the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

enforce and apply the law may do so without creating or applying their own standards." *See State v. Pittman*, 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993).

¶ 18. The regulation at issue here provides:

> *Reporting changes.* A certified family child care operator shall report as soon as possible, but no later than the county or tribal agency's next working day, to the agency any changes that affect the certified family child care operator's eligibility for certification under this chapter, including the following: . . . 7. Individuals moving in or out of the household.

WIS. ADMIN. CODE § DCF 202.08(1)(c).

■■

¶ 19. Bell argues "moving in" is unconstitutionally vague because it did not give her fair notice that having Neely sleep at her house every night and every weekend would constitute "moving in." Bell contends Neely did not move in, but simply visited, and supports her contention by saying he did not have a key, get mail there or move all his possessions in. She claims it was not his *legal* residence.

■

¶ 20. The hearing officer turned to dictionary definitions of "move in" because this term is not defined within the regulation itself. The hearing officer found "move in" defined on two online dictionaries:

> The McMillan Dictionary at http://www.macmillandictionary.com/us/dictionary/american/move-in defines the term as "to start living in a different house or apartment". The Merriam-Webster Dictionary at http://www.merriam-webster.com/dictionary/move?show=1&t=1381168426 defines the term as "to occupy a dwelling or place of work".

Looking at a dictionary definition of a term not defined in the regulation is reasonable. *See Door Cnty. Highway Dep't v. DILHR,* 137 Wis. 2d 280, 293–94, 404 N.W.2d 548 (Ct. App. 1987) ("Absent statutory definition, the ordinary and accepted meaning of a word can be established by reference to a recognized dictionary."). The Department then applied common sense and sound reason emphasizing the major purpose of Wis. Stat. ch. 48 and Wis. Admin. Code § DCF 202 is "to protect and nurture children who are very young and unable to care for themselves." Under these principles, we hold the term "moving in" used in the regulation is clear enough to satisfy due process. "Moving in" has a plain meaning. It does not mean making a place your formal legal residence, or the regulation would have used that language. It means to start living in a different house. When Neely started spending every night and all weekend at Bell's, he moved in. He slept there, he bathed there, and he ate there. He told his probation officer he "moved in" with Bell and she confirmed on two occasions that he was actually living there.

¶ 21. A regulation does not have to "define with absolute clarity and precision what is and what is not" a violation and it is not vague simply because violations under a particular set of circumstances "may not be ascertainable with ease." *See Pittman,* 174 Wis. 2d at 276–77 (citations and quotation marks omitted). To violate due process, the ambiguous conduct "must be such that 'one bent on obedience may not discern when the region of proscribed conduct is neared, or such that' " the factfinder must create and apply its own

standards to determine a violation " 'rather than applying standards prescribed in the statute or rule.' " *Id.* at 277 (citation omitted).

¶ 22. The regulation required Bell to notify the Department if any individual was moving in or out of her household. Because Bell *wants* to interpret this to mean Neely did not move in until he got a key, filled out a change of address with the post office, and spent his weekdays there, does not make it so. The regulation does not need to spell out "moving in" includes "when someone starts sleeping at your home every night, spends all weekend there, and tells a State official he is living there and lets that official confirm this with a verification visit" in order to satisfy due process notice requirements. Neely stopped living at his daughter's and started living at Bell's when he made Bell's house his regular sleeping spot and the home he lived in all weekend. The Department did not create its own arbitrary standard of "moving in"; it applied a reasonable standard, using common sense and the plain meaning of the term "moving in." There was no due process violation.

B. *Controlling Weight Standard.*

¶ 23. Next, Bell argues the Department's interpretation of Wis. Admin. Code § DCF 202.08 should not be given controlling weight because her interpretation is more reasonable. We do not agree.

¶ 24. When the Department interprets its own administrative rules, it is entitled to "controlling weight" unless its interpretation is plainly erroneous or inconsistent with the meaning or purpose of the regulation. *See Aguilar*, 361 Wis. 2d 597, ¶ 17. "If the

[Department's] interpretation is reasonable, it is entitled to controlling weight even if an alternative interpretation is just as reasonable or even more reasonable." *See Madison Gas & Elec. v. LIRC*, 2011 WI App 110, ¶ 8, 336 Wis. 2d 197, 802 N.W.2d 502.

¶ 25. The Department revoked Bell's child care certification because she failed to comply with WIS. ADMIN. CODE § DCF 202.08(1)(c)7., which required Bell to tell DCF about "[i]ndividuals moving in or out of the household" and § DCF 202.08(1)(e), which required Bell to "[c]omply with all requirements in this section" and "[e]nsure that all information provided to the county or tribal agency is current and accurate." Bell violated both provisions by failing to tell the Department Neely moved into her home.

¶ 26. Bell argues the Department's interpretation is unreasonable because she insists Neely did not move in; therefore, Neely was not an individual subject to reporting or background check and Neely visiting her home when the children were not present would not affect her certification. Bell argues the Department's interpretation otherwise is contrary to the purpose of the regulations and was overly broad. We do not agree.

¶ 27. The purpose of the regulations at issue is "to protect and promote the health, safety and welfare of children in the care of [certified] providers." WIS. ADMIN. CODE § DCF 202.01(1). WISCONSIN ADMIN. CODE § DCF 202.06 gives the Department the authority to "deny, suspend, revoke or refuse to renew certification" when "there is danger to the health, safety or welfare of the children in care." § DCF 202.06(1)(c). The Department determined Neely had moved in, and his presence in the home would create a threat to the

health, safety and welfare of the children. It believed this to be so because of Neely's felony conviction where he almost killed Bell.

¶ 28. Bell's assertion that the Department has no authority to be concerned about Neely because he was simply a visitor and did not have any contact with the child-care children misses the point. The Department determined Neely had moved in and, therefore, his presence needed to be reported and did affect certification. Bell's argument to the contrary is not reasonable. If Neely had been living in Bell's home at the time she applied for certification, his criminal history would have resulted in a denial of Bell's application. Neely's return to the home after certification does not give Neely or Bell a free pass even if both attempted to skirt the regulations by sending him elsewhere during operating hours. The regulation *requires* Bell to notify the Department of *any individual moving in or out.* This regulation is for the protection of the child-care children. Bell can assert, promise, vow, profess and swear Neely would not have contact with the child-care children, but this is not good enough because Bell cannot exert complete control over another adult living in her household and this is why the regulation exists. The regulation guards against what Bell cannot guarantee—by moving in, Neely has access to the children the Department is trying to protect. The regulation assists the Department in keeping the children safe by requiring certified providers to give the Department notice of any person living in the household so the Department can determine whether the person poses a threat to the children. The Department's interpretation that the regulation required Bell to notify them Neely moved in was reasonable and supports the overriding purpose to safeguard the well-

being of the children in Bell's care. Therefore, the Department's interpretation deserves controlling weight. Applying controlling weight here, we conclude the Department interpretation was reasonable and therefore its decision must be affirmed.

C. *Sufficient Evidence.*

¶ 29. Bell argues there is not substantial evidence to support the Department's determination she violated the child care certification regulations. We disagree.

¶ 30. We will affirm the Department's decision if it is supported by substantial evidence. *See* Wis. Stat. § 227.57(6). The Department is the factfinder and the credibility of the witnesses and the weight to give to their testimony is left to the discretion of the Department. *See L&H Wrecking Co., Inc. v. LIRC*, 114 Wis. 2d 504, 509, 339 N.W.2d 344 (Ct. App. 1983). Substantial evidence is defined as relevant evidence including all inferences therefrom upon which a reasonable person *might* reach the same decision as the Department. *See Daly v. Natural Res. Bd.*, 60 Wis. 2d 208, 219–20, 208 N.W.2d 839 (1973).

¶ 31. The regulations at issue here provide:

> *Administration.* A certified family child care operator shall do all of the following: . . . 3. Ensure that all information provided to the county or tribal agency is current and accurate.

Wis. Admin. Code § DCF 202.08(1)(e).

> *Reporting changes.* A certified family child care operator shall report as soon as possible, but no later than the county or tribal agency's next working day, to

the agency any changes that affect the certified family child care operator's eligibility for certification under this chapter, including the following: . . . 7. Individuals moving in or out of the household.

WIS. ADMIN. CODE § DCF 202.08(1)(c).

■

¶ 32. Evidence at the hearing showed Neely moved in with Bell before her request for him to move in had been approved, and Bell did not timely report Neely's move-in. Polasky testified Neely told her he had moved in on April 17, 2012, wrote Bell's address as his own on the reporting form on the same date and two home visits by Polasky on May 1, 2012 and June 26, 2012, verified Neely had moved into Bell's home. At that time, Neely was home alone in the house and showed Polasky his bedroom where he had clothing, deodorant, shoes, and basic living needs. Further, Bell submitted the paperwork on April 30, 2012, requesting permission for Neely to move in with her, and asked Thao shortly before that time what needed to be done to make this happen. This evidence would cause a reasonable person to reach the same decision the Department did—Neely moved into Bell's home before the Department gave approval, and Bell failed to timely report this change.

■

¶ 33. Bell argues other evidence could lead a reasonable person to conclude Neely had not yet moved in, but was simply a visitor in her home. Bell and Neely testified this was the case. Because Bell presented a different version of the facts at the hearing, it was for the hearing officer to determine which view of the evidence he wished to accept. *See Daly*, 60 Wis. 2d at 220. The hearing officer found Polasky's testimony

credible. Polasky had no stake in this controversy. She was an independent witness who had no reason to slant the facts for or against Bell. We cannot substitute our judgment for the Department's with respect to the weight of the evidence on disputed issues. *See* WIS. STAT. § 227.57(6). Accordingly, Polasky's testimony constitutes substantial evidence to support the Department's determination that Bell violated the regulations.

¶ 34. Bell's entire argument on this issue addresses whether Neely was a "nonclient resident" of Bell's home as this term is used in WIS. STAT. § 48.685(1)(bm) ("Nonclient resident" is "a person who resides, or is expected to reside, at an entity or with a caregiver specified in par. (ag)1.am., who is not a client of the entity or caregiver, and who has, or is expected to have, regular, direct contact with clients of the entity or caregiver."). She contends that WIS. ADMIN. CODE § DCF 202.08(1)(c) only applies if Neely qualifies as a nonclient resident. We do not agree.

¶ 35. WISCONSIN STAT. § 48.651 provides an overview of certification for in-home child care operators such as Bell and references WIS. STAT. § 49.155(1d), which directs the Department to "promulgate rules establishing standards for the certification of child care providers under s. 48.651." Section 49.155(1d)(b) also instructs the Department to adopt rules to "establish quality of care standards for child care providers that are *higher than* the quality of care standards required for licensure under s. 48.65 or for certification under s. 48.651." (Emphasis added.) The Department did so and promulgated the rules Bell violated here, WIS. ADMIN. CODE § 202.08 "Standards for family child care and in-home child care." As we have seen, the regulation requires Bell to report *any* individual mov-

ing in or out of her household. We need not address whether Neely was or was not a "nonclient resident" because he was an "individual" who moved into Bell's household.

¶ 36. If the Department wanted reporting requirements limited to nonclient residents, it would have used that term in place of individual. Instead, it used the *higher* standard of requiring reporting of *all* individuals moving into a home that has been certified as an at-home child care facility. This is consistent with the purpose of WIS. STAT. ch. 48 and WIS. ADMIN. CODE § DCF 202, which is to protect and nurture children who are very young and unable to care for themselves. Further, the Change of Circumstance Report required of child-care operators, explicitly requires that "ALL persons must be reported," and the "Child Care Certification Rule with Commentary Manual" explains the reporting requirement under § 202.08: "The operator must notify the certifying agency about any individual moving in or moving out of the home so the agency may conduct the required background checks on the individual moving in. This includes children and adults." All of these factors dispel Bell's claims.

¶ 37. Bell also makes much ado about the fact she should not have to report someone in her home who has no contact with the children, and emphasizes she made every effort to ensure Neely was not present when the children were. The hearing officer rejected this argument, as do we. The fact of the matter is Neely *was* present at Bell's home during child-care operating hours on at least two occasions—the days when Polasky came to the home for the verification inspections. Bell's attempt to subvert the rules by removing the children on visiting day by taking them

550

on a field trip does not make everything okay. Although we can be sympathetic to Bell's desire to help Neely, she did not follow the rules. She allowed Neely to move in before the Department's approval and she failed to promptly report Neely was living there. Certification so one can receive federal subsidies is not a right; it is a privilege. In order to maintain this privilege, one must follow the rules. The record contains substantial evidence to support the Department's determination Bell did not follow the rules.

D. *Two-year penalty.*

██ ██

¶ 38. Bell's last complaint is the Department's two-year revocation penalty was too severe. The Department's sanction is a matter of discretion. *See Barakat v. DHSS*, 191 Wis. 2d 769, 782–85, 530 N.W.2d 392 (Ct. App. 1995). We will not substitute our judgment for the Department's unless it erroneously exercised its discretion by imposing a sanction: beyond the range provided in the regulation; inconsistent with the rule, policy or prior practice; or that violates a constitutional or statutory provision. *See* WIS. STAT. § 227.57(8); *Barakat*, 191 Wis. 2d at 782–85.

¶ 39. The sanction imposed by the Department here is authorized under WIS. ADMIN. CODE § DCF 202.06(1) and (2), which provide as material:

**Certification denial. (1)** The county or tribal agency may deny, suspend, revoke or refuse to renew certification if any of the following apply:

(a) The child care operator is not in compliance with certification standards under s. DCF 202.08 or 202.09, as appropriate.

. . . .

(c) The county or tribal agency determines there is danger to the health, safety or welfare of the children in care.

. . . .

(g) The child care operator misrepresents or withholds information.

. . . .

(i) The child care operator, an employee, a volunteer, or any other person having regular contact with the children in care is or has been any of the following:

. . . .

2. Convicted of a felony, misdemeanor, or other offense that substantially relates to the care of children or activities of the program.

. . . .

(2) The county or tribal agency shall require a child care operator to submit a new application for certification if the operator's previous certification was denied, revoked, or not renewed for a reason in s. DCF 202.05 or 202.06(1). The county or tribal agency may refuse to accept a new application for 2 years after the date of the denial, revocation, or refusal to renew the certification.

¶ 40. We determine the sanction imposed, although a tough one, did not constitute an erroneous exercise of discretion. It falls within the two years listed in the rule, is not inconsistent, and does not violate constitutional or statutory provisions. Further, the Record shows the Department's penalty resulted from Bell's "demonstrated unsound judgment by allowing a convicted felon, Mr. Neely, to reside in your home thereby endangering the health and safety and welfare of your children in your care." The two years was

chosen based on the concern for the children given the seriousness of Neely's crime—he almost killed Bell and had to be pulled off of her by another person to prevent Bell's death. Further, the two-year sanction coincided with the length of Neely's probation. This would allow the Department to see if Neely completed his probation without any further incident, which would allow them to determine whether or not he would be a danger to the child-care children. This was reasonable.

*By the Court.*—Order affirmed.